

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMES AVERY RUSH, IV

    Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

    Defendant.

Civil Action No.

**2-03CV-0140J**

## ORIGINAL COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff, James Avery Rush, IV ("Rush"), by the undersigned counsel, complains against Defendant, National Board of Medical Examiners ("NBME") as follows:

### NATURE OF THE ACTION

1. This is an action for emergency, preliminary and permanent injunctive relief, and for, attorneys' fees and costs incurred in bringing this action based on Defendant's refusal to provide reasonable accommodations to Rush pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. Rush is a medical student at the Texas Tech University Medical School (the "Medical School") in Lubbock, Texas, and is scheduled to take the U. S. Medical Licensing Examination ("USMLE") Step 1 on July 2, 2003 in Amarillo, Texas. The NBME has illegally refused and is illegally refusing to accommodate Rush's learning disability by refusing to provide Rush additional time to take the USMLE Step 1. Rush seeks a preliminary and permanent injunction prohibiting the NBME from continuing its violation of

Plaintiff's ADA rights and compelling the NBME to allow Rush to take the examination with appropriate accommodations. NBME's actions are in violation of the ADA, including 42 U.S.C. § 12189.

## PARTIES

2.  Rush, has completed the second year of instruction at the Medical School and is now domiciled in Amarillo, Randall County, Texas. Rush, who has been diagnosed with a learning disability, intends to take the USMLE Step 1 on July 2, 2003 in Amarillo, Texas. Rush's learning disability impairs his reading ability to the point that his competence level is below that expected in comparison to most people and is a disability within the meaning of the ADA. 42 USC §12102(2).

3.  Defendant, NBME, is a District of Columbia non-profit organization headquartered in Philadelphia, Pennsylvania. NBME administers the USMLE, a single three-step examination, the successful completion of which is required for medical licensure in the United States. Additionally, the level of performance on the USMLE is a primary determinant of the quality of institution for which a candidate will be accepted for residency training. Defendant has previously administered and will administer the USMLE Step 1 within the boundaries of this judicial district in June and July 2003.

4.  NBME engages in business in Texas and this judicial district and this action arises from those business activities. NBME, however, does not maintain a regular place of business in this state or this judicial district and does not have a designated agent for services of process in this state. Accordingly, under Texas Civil Practice and Remedies Code of 17.044(b), the Texas Secretary of State is a proper agent for service of process on NBME. NBME's principal place of

business is 3750 Market St., Philadelphia, Pennsylvania 19104 and its registered agent in its state of incorporation is CT Corporation System 1025 Vermont Ave., N.W., Washington, D.C. 20005.

## SUBJECT MATTER JURISDICTION AND VENUE

5.  This action arises under the laws of the United States, specifically the ADA, and accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331. This Court also has jurisdiction pursuant to 42 U.S.C. §12188(a)(1), which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person who is being subjected to discrimination on the basis of disability in violation of Title III of the ADA.

6.  Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district, and the unlawful acts undertaken and resulting injuries occurred in this judicial district.

## FACTUAL ALLEGATIONS

7.  Rush has completed his second year of instruction at the Texas Tech University School of Medicine in Lubbock, Texas. As part of his preparation for the third year of medical school, Rush is required to take the USMLE Step 1. He has applied for and been given a scheduling permit to take the exam between May 1, 2003 and July 31, 2003. He was originally scheduled to take the exam on June 20, 2003, but has rescheduled for July 2, 2003, the week before his third year rotations begin at the Medical School.

8.  Although his learning disabilities were not formally diagnosed until 1998, Rush's learning disabilities date back to elementary and junior high school. Teachers in elementary and junior high school recognized that Rush had difficulty finishing tests and in-class assignments

and, accordingly, his performance on those matters was not comparable in quality to his non-timed, outside of class work. Those teachers provided Rush with informal accommodations, including additional time to finish such projects. Throughout high school and extending into his undergraduate work at The University of Oklahoma, Rush continued to have difficulties regarding timed examinations. In fact his score on the SAT (Scholastic Aptitude Test, the standard test for college admission) was well below what would have been expected given his high school grade point average. During college, he was able to overcome the limitations caused by his disability through informal accommodations from his instructors, including extra time on time limited tests involving reading comprehension, and extra credit work allowed by instructors to make up for below average performance on timed examinations and projects. His college difficulties were also ameliorated to some degree by his being a mathematics' major, where the need to do significant reading for exams was absent. Had Rush not received these informal accommodations, he may have failed his courses completely.

9. Upon completion of his undergraduate studies, Rush sought admission to medical school. Rush initially took the MCAT without any accommodations and scored a 19. A score of 19 is well below the average score of 24 and is not sufficient for entry into an accredited medical school. Thinking the 19 was a fluke, Rush retook the MCAT without any accommodations, only to score another 19.

10. Having scored well below average twice on the MCAT and having performed only marginally on the SAT years earlier, Rush sought a professional evaluation of potential learning difficulties. As a result of that evaluation, he was diagnosed with significant visual perceptual processing weakness that resulted in his being unable to process what he reads as quickly as most other persons. This inability to process the written language substantially limits

Rush's reading and learning abilities and results in his being unable to perform adequately on timed examinations as most people would.

11. As a result of this diagnosis, Rush sought formal accommodations in the form of additional time to retake the MCAT. Rush's request for additional time on the MCAT based on his disability was granted, and this time he scored a 25, a substantial improvement over his non-accommodated score of 19.

12. Based on the results of the MCAT, achieved with an accommodation, Rush was admitted to the Medical School. The Medical School also has provided Rush with the reasonable accommodation of additional time on exams taken to date in medical school. With the accommodations, Rush successfully completed the first two years' courses at the Medical School as of May 2003.

13. Students at the Medical School (as in many medical schools in the United States) are requested to take and pass the USMLE Step 1 before starting the third year of medical school. The third year of school consists of "rotations," i.e., medical education through the practical application of the principles learned in the classroom. The Medical School requests Step 1 be taken before the third year begins to avoid interfering with the third year studies. Passing the Step 1 is a prerequisite to completing the third year, obtaining residency admission, and being able to sit for the final Step 2 and 3 examinations.

14. The NBME develops and administers the USMLE Step 1 at various test sites and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

15. The NBME recognizes the right of disabled persons to accommodations by providing an application on which examinees can request test accommodations for the USMLE Step 1, including accommodations for learning disabilities like those suffered by Rush.

16. In January 2003, anticipating the completion of his second year of medical school, Rush made application to take the USMLE Step 1 in June 2003. Rush also requested a test accommodation based on his disability. The request for accommodation was supported by the same information Rush provided to the MCAT and the Medical School that resulted in his being accommodated on the basis of a learning disability with extra time for the MCAT and medical school exams.

17. In a letter dated March 27, 2003, the NBME denied Rush's request for an accommodation for the USMLE Step 1 claiming Rush had not demonstrated that he was "significantly impaired in one or more life activities". NBME issued a Step 1 exam Scheduling Permit for May through July 2003, but made no allowance to accommodate his disability. Prior to the NBME's March 27, 2003 denial of Rush's request for accommodation, the NBME did not seek independently to examine Rush, nor did not meet or interview or otherwise independently evaluate Rush.

18. Rush was originally scheduled to take the USMLE Step 1 without any accommodation on June 20, 2003. In hope that the NBME would reconsider his request he rescheduled the test for July 2, 2003, the last day available before his third year school work begins on July 7, 2003.

19. On April 21, 2003, Rush, acting through counsel, wrote to NBME to request reconsideration of the denial of his accommodations request. Rush provided NBME with

additional information and evidence clarifying his prior disability diagnosis and his life-long difficulties with reading and learning.

20. By an April 25, 2003 letter, Dr. Carol Morrison Featherman, on behalf of NBME, denied Rush's request for reconsideration. Again, NBME did so without any examination, evaluation, or even an interview with Rush.

21. The facts establish that Rush has definite learning disabilities that substantially limit his major life activities of learning, reading and writing as compared to most people. Under the ADA, Rush is entitled to a reasonable accommodation of additional time to take the USMLE Step 1 exam. NBME's refusal to provide Rush with an accommodation of extra time for the USMLE Step 1 exam, despite knowing of Rush's documented learning disabilities that are protected under the ADA, is a violation of Rush's right under the ADA.

22. Rush will be unable to complete his medical school education in the same manner as his classmates if he does not successfully complete the USMLE Step 1. Moreover, he will be placed at a distinct disadvantage of competing for quality residency positions if he must take the exam without accommodation for his disability. In the worst case scenario, Rush's medical career and dream could end if he is unable to pass the USMLE Step 1, because the NBME will not accommodate his disability as required by the ADA.

**COUNT I — VIOLATION OF THE ADA; REQUEST FOR INJUNCTIVE RELIEF**

23. Rush incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

24. Rush is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely,

learning disabilities that substantially limit his major life functions of learning, reading, and writing. 42 U.S.C. §12102(2)(A).

25. Title III of the ADA (46. U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE Step 1 as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

26. The NBME is covered by the ADA pursuant to 42 U.S.C. §12189 in its capacity as the administrator of the USMLE Step 1.

27. Pursuant to 28 C.F.R. § 36.309(b), the NBME must assure that any examination

> is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills.

One reasonable accommodation for a disabled person, such as Rush, that may be allowed under the ADA is lengthening the time permitted for completing the examination.

28. Rush has a learning disability that substantially limits his major life activities of learning, reading and writing. Rush's condition which has been diagnosed through testing, examination and evaluation by experts in this field constitutes a disability within the meaning of the ADA.

29. Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C.

§ 12102(2). Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities. The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA. The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 CFR, pt. 36, App. B.

30. As noted above, Rush has a learning disability that substantially impairs his ability to read and process the written word. His disability precludes him from learning, reading and writing in the same manner and in the same amount of time as most people. This learning disability substantially limits his activity of learning, reading, and writing, in comparison to most people and certainly in comparison to his peers, other medical students taking the USMLE.

31. Failure in the taking of the USMLE, necessarily precludes an individual from employment as a medical doctor in the United States. Successful passing of the USMLE is a prerequisite to licensure to practice medicine in the United States, and the level of performance in the taking of the USMLE is a primary determinant of a candidate's job opportunities for residency. Thus, Rush's entire future livelihood as a medical doctor rests on this exam.

32. Rush made formal written request of Defendant for reasonable accommodation for his disability in connection with taking the USMLE Step 1, i.e., double time to take the exam, an accommodation NBME has made to some people who have requested the accommodation. Such accommodations are consistent with the reasonable accommodations, he was provided to take the MCAT for entry into medical school, the informal accommodations he received during early and undergraduate studies, and the accommodations he has received at the Medical School

in completing his education to date. The NBME has granted similar accommodations to other candidates in the past taking the Step 1 exam.

33.     The NBME's refusal to provide the reasonable test accommodations Rush requested for the USMLE Step 1 constitutes an illegal failure to accommodate a disabled person in violation of the ADA.

34.     Rush will be irreparably harmed if the NBME continues its illegal refusal to provide him the reasonable test accommodation as requested and unless this Court grants preliminary injunctive relief prohibiting the continued violation of Rush's ADA rights and compelling the NBME to provide the requested accommodation, in that (a) Rush's medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing his medical school education; (b) given his history with prior examinations, Rush is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA; (c) Rush's opportunity to engage in his career of choice is effectively on hold until the NBME is compelled to comply with the ADA; (d) Rush will be unable to continue the same pace of his medical school career as his peers if he is unable to pass the USMLE Step 1 at this time; (e) requiring Rush to take the USMLE Step 1 without accommodation , puts him at distinct disadvantage given his disability; (f) reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Rush's future residency and professional career options; and (g) Rush faces a future expulsion proceeding under the Medical School's policy if he takes and fails to pass the USMLE Step 1 in a timely manner.

35.     The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

36. The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Rush with the ADA accommodations to which he is justly entitled.

37. As a result of the NBME's violation of the ADA, Rush has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

38. The NBME in denying Rush's request for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Rush's ADA rights.

39. Accordingly, under the ADA, Rush is entitled to and hereby requests entry of a preliminary injunction directing the NBME immediately to cease and desist from its refusal to accommodate Rush's requests for accommodation on the USMLE Step 1 and ordering that the NBME immediately comply with the ADA by allowing Rush the requested accommodation of double the standard time to take the USMLE Step 1.

40. Further, Rush is entitled to and hereby requests that the Court enter a permanent injunction directing that the NBME immediately to cease and desist its refusal to accommodate Rush's request for an accommodation on the USMLE Step 1 and any future USMLE Step examinations to be taken by Rush and that the NBME comply with the ADA by providing Rush's requested accommodation with regard to the USMLE Step 1 and future USMLE examinations for which Rush is otherwise entitled to sit and for which he otherwise makes proper application.

## COUNT II - REQUEST FOR ATTORNEY'S FEES

41.   Rush incorporates by reference Paragraphs 1 through 40 as fully set forth herein.

42.   42 U.S.C. § 12188(a)(1), incorporates into Title III of the ADA the remedies and procedures set forth in 42 U.S.C. § 2000a-3(a) including the right to recovery of reasonable attorney's fees, and costs and expenses incurred in bringing this claim under the ADA.  Rush is entitled to recovery and, hereby, does request recovery of all reasonable attorney's fees, costs, and expenses incurred in the bringing and prosecution of this action.

## JURY DEMAND

43.   Rush hereby demands a trial by jury for all issues in this case that may be triable by a jury of his peers.

WHEREFORE, PREMISES CONSIDERED, Rush requests that this Court grant judgment in his favor and against the Defendant as follows:

1.   enter a preliminary injunction directing that the NBME immediately cease and desist from its refusal to accommodate Rush's request for reasonable accommodations on the USMLE Step 1 examination and ordering that the NBME immediately comply with the ADA by allowing Rush the requested accommodation of double the standard time in which to take the USMLE Step 1 examination;

2.   order Defendant to appear on the date and time affixed by this Court to show cause, if any there be, why a preliminary injunction as prayed for above, should not be issued;

3.   enter judgment in the form of a permanent injunctive order against Defendant directing NBME to immediately cease and desist from its refusal to accommodate Rush's request

for accommodation on the USMLE Step 1 examination and any future USMLE Step examinations for which Rush is otherwise entitled to sit and for which he has made proper application and ordering NBME to comply with the ADA by allowing Rush the requested accommodation of double the standard time to take any of the USMLE Step examinations;

4. enter judgment against the Defendant awarding such compensatory damages as may be proven by Rush and to which he is entitled;

5. enter judgment against the Defendant awarding Rush recovery of his reasonable attorney's fees, costs and expenses incurred in bringing and prosecuting this litigation; and

6. awarding such other and further relief as may be appropriate, in law or in equity, to which Rush may otherwise by entitled.

Respectfully submitted,

John Mozola
Brad A. Chapman, SBOT# 04119010
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas  79120-1656
806.372.5050
806.372.5086 (Fax)

*John Mozola*
*Attorneys for Plaintiff*