U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 16 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES AVERY RUSH, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. 2-03CV-0140J |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | |
| EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW ON THE AMERICANS WITH DISABILITIES ACT

GIBSON, OCHSNER & ADKINS, LLP
Thomas C. Riney – TBN 16935100
Stephen H. Dimlich, Jr. – TBN 05879550
701 South Taylor, Suite 500
Amarillo TX 79101-2400
(806) 372-4271 - FAX: (806) 378-9797

ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

I.      BACKGROUND .................................................................................................1

II.     DISCUSSION ....................................................................................................2

        A.  Overview of Applicable Provisions and Central ADA Issue .............................2

        B.  Plaintiff must establish that he is disabled under the ADA;
            Plaintiff has not met this burden.........................................................................3

III.    CONCLUSION.................................................................................................11

15784.00001  67783.1

## TABLE OF AUTHORITIES

**Cases**

*Bercovitch v. Baldwin School, Inc.*,
    133 F.3d 141 (1st Cir. 1998) ........................................................................ 10

*Gonzales v. National Board of Medical Examiners*,
    225 F.3d 620 (6th Cir. 2000), *cert. denied*,
    532 U.S. 1038 (2001) ........................................................... 4, 5, 8, 9, 10

*Price v. National Board of Medical Examiners*,
    966 F.Supp. 419 (S.D. W.Va. 1997) ................................................. 5, 6, 7, 8

*Sutton v. United Air Lines, Inc.*,
    527 U.S. 471 (1999) ........................................................................................ 5

*Toyota Motor Mfg. Kentucky, Inc. v. Williams*,
    534 U.S. 184 (2002) ........................................................................................ 5

**Statutes and Regulations**

42 U.S.C.A. § 12102(2)(A) ................................................................................ 3

42 U.S.C.A. § 12189 ...................................................................................... 2, 3


28 C.F.R. § 36.104 ............................................................................................ 4

28 C.F.R. § 36.309(b)(1)(i) .............................................................................. 3

28 C.F.R., part 36, App. B................................................................................ 4

15784 00001  67783.1

TO THE HONORABLE MARY LOU ROBINSON, DISTRICT JUDGE:

Defendant NATIONAL BOARD OF MEDICAL EXAMINERS ("Defendant" or "NBME") submits this Memorandum of Law relating to the Americans With Disabilities Act ("ADA").

# I.
# BACKGROUND

Plaintiff JAMES AVERY RUSH, IV ("Plaintiff"), is a medical student at the Texas Tech University Medical School who alleges he is scheduled to take the United States Medical Licensing Examination ("USMLE") Step 1 exam on July 2, 2003, in Amarillo, Texas. *See* Plaintiff's Original Complaint, ¶1.[1]  Plaintiff alleges that Defendant has violated the ADA in denying Plaintiff's request for an accommodation in taking the Step 1 exam (Plaintiff is requesting double the standard time for taking the Step 1 exam). *See* Plaintiff's Original Complaint, ¶1, and Plaintiff's proposed Preliminary Injunction Order.

With respect to his alleged disabilities, Plaintiff claims that he has Attention Deficit with Hyperactivity Disorder ("ADHD") and a reading disability, which he alleges substantially limit his major life activities of learning, reading and working. *See* Plaintiff's Brief in Support of Motion for Preliminary Injunction, p. 1.  Although Defendant provides reasonable accommodations in accordance with the ADA for individuals with documented disabilities, Defendant denies that Plaintiff has appropriately

---

[1] Defendant's records indicate Plaintiff is scheduled to take the exam on June 20, 2003.

15784.00001  67783 1

documented or otherwise proven that he is disabled within the meaning of the ADA and is thus entitled to accommodation.

## II.
## DISCUSSION

**A.      Overview of Applicable Provisions and Central ADA Issue.**

Title III of the ADA prohibits discrimination against persons with disabilities in professional examinations such as the Step 1 exam.  Specifically, 42 U.S.C.A. § 12189 provides as follows:

> Any person that offers examinations or courses related to applications, licensing, certification or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to **persons with disabilities** or offer alternative accessible arrangements for such individuals.

42 U.S.C.A. § 12189 (West 1995) (emphasis added).  As an entity which develops the Step 1 exam and is responsible for decisions related to requested accommodations pertaining to the exam, Defendant does not dispute that the above-cited statute applies to it in this context.  Indeed, Defendant provides reasonable accommodations in accordance with the ADA for individuals with documented disabilities who demonstrate a need for accommodation.   Before approving an individual's request for an accommodation, however, Defendant requires that the individual submit documentation establishing that the individual is, in fact, a disabled individual under the applicable provisions of the ADA.  This approach is consistent not only with the ADA but also with the regulations

-2-

issued by the Department of Justice to implement Title III of the ADA, one of which provides as follows:

> Any private entity offering an examination covered by this section must assure that—(i) The examination is selected and administered so as to best ensure that, when the examination is administered **to an individual with a disability** that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)...

28 C.F.R. § 36.309(b)(1)(i)(2003) (emphasis added).

Due to the fact that Defendant admits that 42 U.S.C.A. § 12189 applies to the instant situation and also concedes that it must reasonably accommodate individuals who have appropriately proven that they are disabled within the meaning of the ADA, the central ADA issue in this case is whether Plaintiff is a disabled individual under the ADA. Given the vital importance of this question, Defendant will now discuss what Plaintiff must establish in order to show that he is disabled under the ADA.

**B.** **Plaintiff must establish that he is disabled under the ADA; Plaintiff has not met this burden.**

Under the general provisions of the ADA, "disability," with regard to an individual, is defined as being a physical or mental impairment that substantially limits one or more major life activities of that individual. 42 U.S.C.A. § 12102(2)(A)(West 1995). The ADA fails to define the terms "physical or mental impairment," "substantially limits," or "major life activities," and no agency has been given the authority to issue

15784 00001  67783 1

regulations implementing the generally applicable provisions of the ADA. *See Gonzales v. National Board of Medical Examiners*, 225 F.3d 620, 626 (6th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001). However, the Department of Justice has, in its regulations implementing Title III of the ADA, defined disability as follows:

> Disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…

28 C.F.R. § 36.104 (2003). Thus, in addition to having a physical or mental impairment, in order to be disabled under the ADA, the individual in question's impairment must **substantially limit** one or more of that person's major life activities. Importantly, pursuant to the Department of Justice's preamble to the regulations it issued implementing Title III, whether a limitation is a "substantial limitation" is evaluated in terms of the **general population**. *See Gonzales*, 225 F.3d at 626 (emphasis added). Specifically, the Department of Justice preamble states that when deciding whether a person is "substantially limited," an analysis is conducted as to whether "the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed **in comparison to most people**." 28 C.F.R., part 36, App. B (West 2003) (emphasis added). Plaintiff cites to the same portion of the preamble in his Brief and concedes that the appropriate comparison is to "most people." *See* Plaintiff's Brief in Support of Motion for Preliminary Injunction, pp. 11-13; *see also* Plaintiff's proposed Preliminary Injunction Order.

-4-

In discussing impairments under the employment provisions of the ADA, the Supreme Court has made it clear that not all impairments are substantially limiting:

> Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490-91 (1999) (emphasis original). In the *Sutton* case, the Supreme Court cited to two dictionaries in stating that although the ADA does not define "substantially limits," "substantially" suggests "considerable," "specified to a large degree," "in a substantial manner," "considerable in amount, value, or worth," "being that specified to a large degree or in the main," "relating to or proceeding from the essence of a thing; essential" and "of ample or considerable amount, quantity or dimensions." *Sutton*, 527 U.S. at 491. Thus, and as is also indicated in *Gonzales*, 225 F.3d at 627 n. 12, the ADA only protects individuals with impairments that limit them from one or more major life activities in a "major way, to a considerable amount, or to a large degree" but not those impairments that limit an individual "in a trivial or even moderate manner." More recently, in *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 196-97 (2002), the Supreme Court defined "substantial" in an ADA employment case virtually identically to the way it did in *Sutton*.

With respect to case law precedent, *Price v. National Board of Medical Examiners*, 966 F.Supp. 419 (S.D. W.Va. 1997), is instructive in this matter. In that case, three medical students sought additional time to take Step 1 of the USMLE.

15784.00001 67783 1

Significantly, the Court noted that the purpose of the ADA is **not** "to allow individuals to advance to professional positions through a back door.  Rather, it is aimed at rebuilding the threshold of a profession's front door so that capable people with unrelated disabilities are not barred by that threshold alone from entering the front door." *Price*, 966 F.Supp. at 421-22 (citation omitted).   The Court then stated that if it were to grant testing accommodations to those who are not disabled under the ADA, it would be allowing individuals to advance through the "proverbial back door."  *Price*, 966 F.Supp. at 422. To do so, as stated by the Court, would subvert the integrity of the USMLE and hinder the NBME's ability to distinguish between qualified and unqualified students.  *Price*, 966 F.Supp. at 422.

The *Price* case, like the instant case, involved the issue of whether the plaintiffs had a disability under the ADA and were "substantially limited" in a major life activity. After reviewing pertinent legislative history, regulations, and case law, the Court determined that when evaluating whether an impairment is substantially limiting, the issue to be resolved is whether the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed "in comparison to most people in the general population." *Price*, 966 F.Supp. at 422 (emphasis original). After deciding that the plaintiffs were able to learn as well as or better than the average person in the general population, the Court entered judgment for the defendant, NBME.

Factually, in *Price*, each of the three plaintiffs had been diagnosed with, among other disorders, ADHD, and each forwarded applications to the NBME requesting

-6-

15784.00001  67783.1

additional time and private rooms when taking Step 1 of the USMLE.  The NBME denied

the requests, and plaintiffs filed suit for injunctive relief.  After reviewing the particular

allegations and circumstances of each plaintiff, the Court concluded that none of the

plaintiffs had provided sufficient documentation to support a clinical diagnosis of their

alleged disorders, including ADHD.  *Price*, 966 F.Supp. at 423-24.

The *Price* Court also emphasized that none of plaintiffs had exhibited a pattern of

substantial academic difficulties.  For instance, with respect to plaintiff Price, the Court

cited the fact that without accommodation, he graduated from high school with a 3.4

grade point average and from college with a 2.9 grade point average.  Like the plaintiff in

the instant case, Price received testing accommodations while taking the MCATs.

However, the Court noted that there was little evidence that Price's symptoms resulted in

significant impairment in home, school, or work functioning.  *Price*, 966 F.Supp. at 423.

Similarly, with respect to plaintiff Singleton, the Court noted that he graduated from high

school with a 4.2 grade point average, earned admittance to the United States Naval

Academy, and earned a degree in physics from Vanderbilt University.  Likewise, in high

school, plaintiff Morris was a National Honor Student.  Although he had poor academic

performance during his first year of college, his grades improved and he graduated from

college with average grades.  The Court found it significant that Morris' accomplishments

were attained without accommodation for his alleged disability.   Based upon the

aforementioned facts, among others, the *Price* Court concluded that each of the plaintiffs

had an average or greater than average ability to learn (and, thus, did not suffer from an

-7-

15784.00001   67783.1

impairment which substantially limited the life activity of learning in comparison to most people). In reaching its holding, the Court also stated that "there is no evidence to suggest that special accommodations while taking the USMLE, including extended time, would benefit persons properly diagnosed with ADHD." *Price*, 966 F.Supp. at 424.

The *Gonzales* case (previously fully cited at p. 4 of this Memorandum) is also similar to the instant case. In *Gonzales*, the plaintiff, like the Plaintiff herein, requested extended time to take the Step 1 exam because of an alleged learning disability. The federal district court denied plaintiff's request for injunctive relief, and the Sixth Circuit affirmed that decision. Further, as in the instant case, although plaintiff's medical school allowed plaintiff extra time on examinations, the NBME denied plaintiff's request for extended time because plaintiff did not prove that he was a disabled individual under the ADA. *Gonzales*, 225 F.3d at 623. After plaintiff took the Step 1 exam twice without accommodations, and failed both times, he applied to take the Step 1 exam a third time, again requesting accommodations. *Gonzales*, 225 F.3d at 623-624. After his request for accommodations was again denied by the NBME, Gonzales filed suit against the NBME alleging that he was a covered individual under the ADA and thus was entitled to additional time to take the USMLE Step 1 exam.

After an evidentiary hearing, the federal district court denied Gonzales' request for injunctive relief based upon, among other things, its finding that there was no substantial likelihood that Gonzales would succeed on his claim because he was not disabled under the ADA. *Gonzales*, 225 F.3d at 625. The district court also relied on the NBME's

-8-

experts, who testified that Gonzales did not have a documented history of academic achievement below expectations that would support a diagnosis of a learning disability, in concluding that plaintiff's performance in reading and writing tests fell within the average to superior range when compared to most people. *Gonzales*, 225 F.3d at 625.

On appeal, the Sixth Circuit recognized that the only question in the case was whether Gonzales was disabled within the meaning of the ADA. *Gonzales*, 225 F.3d at 626. In addressing this issue, the Sixth Circuit appropriately recognized that when determining whether an individual is "substantially limited" in one or more major life activities, that individual is compared to the general population. *Gonzales*, 225 F.3d at 626.

With respect to plaintiff's claim that his reading was restricted when compared to the average person, the *Gonzales* Court found that Gonzales was not substantially limited in reading because he could read as well as the average person. *Gonzales*, 225 F.3d at 629. In reaching that conclusion, the Court specifically stated that Gonzales did not fit within Congress' vision of the disabled population, citing to the following: Gonzales graduated from high school with a 4.3 (out of 5.0) grade point average; Gonzales had no formal accommodations for alleged learning disabilities during high school; Gonzales scored 1050 on his SAT, taking the test without accommodations; and, he earned a grade point average of 3.15 out of 4 in his undergraduate years when he majored in physiology and only had accommodations during his junior and senior years. *Gonzales*, 225 F.3d at 629-30. Finally, the Court rejected Gonzales' claim that he was disabled in the major life

-9-

activity of working because, when compared to most people, his impairments did not substantially limit his ability to work. *Gonzales*, 225 F.3d at 630. In the end, the Sixth Circuit affirmed the federal district court's order denying injunctive relief and concluded that Gonzales had no likelihood of success on the merits. *Gonzales*, 225 F.3d at 632.

Consistently, in *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141 (1st Cir. 1998), the First Circuit ruled that the plaintiffs (a student diagnosed with ADHD, among other disorders, and his parents) failed to meet their burden of showing probability of success on the merits that the student was disabled. Although the Court found that ADHD may be a mental impairment under the ADA, the Court ruled that the plaintiffs did not meet their burden of showing they were likely to succeed in proving that the student suffered a substantial limitation of a major life activity (learning). In reaching this determination, the Court compared the student to the average person in the general population. The Court found it important that the student had not experienced significant academic difficulties and excelled academically for most of his years. The Court reasoned that although the student's hyperactivity and distractibility may have affected his capacity to reach his maximum learning potential, there was not sufficient evidence that it had substantially impaired his basic learning abilities. *Bercovitch*, 133 F.3d at 155-56.

Applying the above to the instant case, Defendant denies that plaintiff is a disabled individual under the applicable provisions of the ADA. Therefore, Plaintiff is not entitled to accommodations pertaining to the Step 1 exam. More particularly, and as will be shown by the evidence and testimony to be presented by Defendant at the injunction

15784 00001 67783 1

hearing, the documentation which Plaintiff has submitted to Defendant regarding his alleged disability does not establish that Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities.[2]

### III.
### CONCLUSION

Plaintiff bears the burden of establishing that he is a disabled individual under the ADA entitled to accommodations pertaining to the Step 1 USMLE.  Plaintiff has not submitted documentation to Defendant which satisfies this burden.  Therefore, Plaintiff's request for injunctive and all other relief must be denied.

SIGNED this _16_ day of June, 2003.

---

[2] Moreover, Plaintiff does not fit Congress' portrayal of a disabled person, as reflected in 42 U.S.C. § 12101(a)(6), in that he does not "occupy an inferior status in our society," and is not "severely disadvantaged socially, vocationally, economically, and educationally."  More particularly, Plaintiff is from a prominent Amarillo family, his father is a physician, Plaintiff graduated third in his high school class of over 335 students, he had over an 100 average at Tascosa High School, he had no formal accommodations for his alleged disabilities until he re-took the MCAT, and he graduated from the University of Oklahoma where he also played Division I tennis.  In short, as was the case in *Gonzales*, 225 F.3d at 629-30, Plaintiff is not a member of the severely disadvantaged group Congress envisioned when it enacted the ADA.  *See* also *Bercovitch*, 133 F.3d at 155-156 (holding that plaintiff, who was diagnosed with ADHD, was not disabled under the ADA because, in part, his alleged disability did not significantly affect his academic success).

Respectfully submitted,

GIBSON, OCHSNER & ADKINS, LLP
  Thomas C. Riney – TBN 16935100
  Stephen H. Dimlich, Jr. – TBN 05879550
701 South Taylor, Suite 500
Amarillo TX  79101-2400
(806) 372-4271
(806) 378-9797 FAX

By _____
        Thomas C. Riney

ATTORNEYS FOR DEFENDANT
NATIONAL BOARD OF MEDICAL
EXAMINERS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Memorandum of Law is being served upon counsel of record by hand delivery this ____ day of June, 2003, as follows:

John Mozola
Vincent E. Nowak
Brad A. Chapman
MULLIN HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, TX  79101

_____
Thomas C. Riney

-12-

15784 00001   67783 1