UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMES AVERY RUSH, IV

    Plaintiff,

v.                                                      Civil Action No. 2-03CV-0140J

NATIONAL BOARD OF MEDICAL
EXAMINERS,

    Defendant.

**PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**To the Honorable United States District Court Judge Mary Lou Robinson:**

Immediately before the preliminary injunction hearing commenced, Defendant served its brief in opposition to the preliminary injunction. Plaintiff James Avery Rush, IV ("Plaintiff") now replies to Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction as follows:

**I.**     **Summary of Argument**

The sole issue is whether Plaintiff is disabled within the meaning of the ADA. Dr. Egerton and Dr. Deshler testified unequivocally that Plaintiff has a reading disorder. Regulations promulgated under the ADA provide that an examination like Step 1 should "accurately reflect the individual's aptitude or achievement level or whatever factor the examination purports to measure, rather than reflecting the individual's impaired... skills..." 28 C.F.R. § 36.309(b)(1)(i) (2003). Defendant's trial representative Dr. Golden testified that the purpose of the Step 1 was not to measure reading speed or comprehension, but to judge substantive knowledge of the applicant in basic science. Plaintiff's experts testified without contradiction that extra time on the test would not appreciably aid those with normal reading

J:\08017\02\Pleadings\0801702017.doc

Page 1

ability and would not compensate for lack of understanding the scientific knowledge that was being tested. Defendant has not contended that Plaintiff lacks the substantive knowledge to pass the test.

The Step 1 test includes seven segments of one-hour duration each. For each segment, the applicant must answer 50 questions, which averages 1 minute 12 seconds per question. Dr. Golden required 45 seconds to simply read one question from a sample exam. Plaintiff testified that he must read each question two or three times before he comprehends it. It involves no leap of faith to conclude that Plaintiff's important life activity of reading and learning is substantially limited by this disability. In the words of the definition of "substantially limits," Plaintiff's reading and learning are restricted "as to the conditions, manner, or duration under which they can be performed in comparison to most people." Simply put, as compared to most other people, Plaintiff is substantially limited in his ability to read and learn. Therefore, Plaintiff is disabled.

Plaintiff will reply to Defendant's discussion of the elements required for a preliminary injunction in the order addressed in Defendant's brief.

## II.  Substantial likelihood of success on merits

In order to prove substantial likelihood of success on the merits, Plaintiff is not required to show the absence of fact issues. The following discussion demonstrates there is ample evidence of a disability.

A common sense approach allows the court to resolve the battle of the dueling experts. It is uncontradicted that the Woodcock Johnson test is accepted by Defendant in support of applications for accommodation and is an accepted objective standard for identifying a reading

disability. Dr. Egerton administers the test 150 times a year. The deficiencies shown on Plaintiff's Exhibit 11 all show the results of timed tests. Most of the other areas tested were not timed and Plaintiff had average scores. Dr. Egerton is in the best position to make the clinical analysis. He is the only witness who actually administered the tests and interviewed Plaintiff in a clinical setting.

There is a high correlation between performance on the MCAT exam (the medical entrance school entrance exam) and the Step 1 test, which have the same types of questions. Plaintiff failed the MCAT test twice without accommodation and passed with the accommodation of double time. The only reasonable conclusion is that Plaintiff has a reading disability that is accommodated by extra time.

Dr. Flanagan, who was first employed last Thursday, arrived at a conclusion contradicting the objective findings by using "other available data". She testified that someone with Plaintiff's academic record simply could not have achieved that record if he had the disability shown by the clinical results of the Woodcock Johnson tests, even though she admitted there is a segment of the population of persons with learning disabilities who have high IQs. In response to a question from the Court at the end of the hearing asking him to respond to Dr. Flanagan's conclusion, Dr. Egerton testified that there is an identified segment of the population with reading disabilities who have high IQs; that learning disabilities for some become more apparent as the subject matter becomes more difficult; and that early accommodation, such as received by Plaintiff, often allows a disabled person, especially one with a high IQ, to perform well until later in life. Dr. Egerton concluded that the appropriate accommodation for Plaintiff's reading disorder is to allow him extra time on the Step 1 examination.

Dr. Flanagan placed great emphasis on Plaintiff's academic performance that she said was without "formal accommodation". However, the uncontradicted evidence established that throughout his academic career, including medical school, Plaintiff was allowed either double time or whatever time needed on timed tests. Dr. Flanagan also placed emphasis on the fact that Plaintiff had average scores on the 8th, 9th, 10th grade "Iowa tests". Dr. Egerton testified without contradiction that these tests are not demanding, the time limits are very broad, and the difficulty was not such as to test Plaintiff's disability. Dr. Flanagan also relied on the fact that after twice taking the SAT with below average results on the verbal part, Plaintiff on the third try had an average score. There was no evidence comparing the nature of the SAT test to the MCAT or Step 1 test.

In short, there is no scientific basis for accepting Dr. Flanagan's opinion over the results of the Woodcock Johnson tests. She simply concluded, without reference to specific scientific principles, that the data she saw showed that results of the Woodcock Johnson were not accurate. *Daubert* requires a proponent of expert testimony show the following:

- Whether the theory can be and has been tested;

- Whether the theory has been subjected to peer review;

- What the known or potential error rate is and whether there are standards for control of the technique; and

- Whether the theory is generally accepted.

Dr. Flanagan's methodology does not satisfy the requirements of *Daubert*.

Dr. Flanagan criticized Dr. Deshler, a nationally prominent expert on young adult learning disabilities, for his statement that he saw a "convergence" between the results of the

Wechsler Adult Intelligence Scale Test administered by Ms. Glass and the Woodcock Johnson tests administered by Dr. Egerton. Dr. Deshler explained that statement by saying that the disparity between the high IQ shown by the Wechsler test and the learning disability shown by the Woodcock Johnson tests suggested that further investigation was appropriate. Defendant attempted to construe this statement as an indication that Dr. Deshler found that the results of the two tests were the same. He never made that comparison.

Defendant's other psychologist expert, Dr. Gordon, was presented to opine with respect to AD/HD. However, Dr. Gordon did not opine with respect to Plaintiff's actual diagnosis of AD/HD **NOS**. More importantly, Dr. Gordon testified that the results of the Woodcock Johnson tests (tests routinely administered by Dr. Gordon) administered to Plaintiff supports the fact that Plaitniff is substantially limited in his ability to read and learn. In other words, Plaintiff is learning disabled, as defined by the ADA.

## II.     Irreparable harm

Proof of irreparable harm is satisfied by the inadequacy of available legal remedies; even if there is a legal remedy, injunctive relief is appropriate if the legal "…remedy is not as practical and efficacious … as the remedy in equity." *Justin Industries v. Choctaw Securities L.P.*, 920 F.2d 262, 269 (5th Cir. 1990). The difficulty of calculation of damages is sufficient to show the inadequacy of the legal remedy. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.* 878 F.2d 806,810 (note 1) (5th Cir. 1989).

Under the ADA, there is no provision providing for recovery of actual damages, other than attorneys' fees. There are no cases that allow recovery of all the damages Plaintiff likely will incur from having to take the Step 1 without accommodation. This demonstrates inadequacy of the legal remedy. Further, the legal remedy of money damages is inadequate

because of the difficulty of proof of damages. For instance, if Plaintiff were never granted accommodation and failed the Step 1 three times without accommodation, in order to recover economic damages, he would have to prove that he would have passed the test with accommodation, an issue that Defendant would no doubt claim involves speculation. If Plaintiff were to seek damages for lost profits, those damages would be the discounted value of the difference over Plaintiff's career between income as a doctor and income from another profession. Difficulty of proof of lost profits shows that the damage remedy is not as effective as injunctive relief. *Lakedreams v. Taylor,* 932 F.2d 1103, 1009 (5th Cir. 1991) (finding of irreparable harm when economic damages are difficult to calculate).

Irreparable harm is shown by the uncontradicted evidence. If Plaintiff is disabled, he is entitled to take the test more times with accommodation. If he takes the test without accommodation and fails, he has lost one of his opportunities to pass. Dr. Golden acknowledged that a failure by Plaintiff would be adversely considered by residency programs. This is an injury for which money damages are difficult to calculate, even if there is a cause of action for money damages for an injury of this type.

### III. Harm to Defendant

There is absolutely no harm to Defendant from this Court's granting injunctive relief. In response to a question from the Court, Defendant's representative admitted that if Plaintiff takes the test with accommodation and passes, his score will be posted showing that he received an accommodation. Any person receiving that information can make her own determination whether she wishes to rely on the score. In any event, the integrity of the test is not diminished by allowing someone to take the test with accommodation who has as low scores on the Woodcock Johnson tests as Plaintiff. Though Defendant's representative testified of the desire

for standard conditions, he acknowledged that accommodations are often granted. Significantly, there was no testimony that granting Plaintiff the accommodation of extra time would invalidate the use of the exam to show Plaintiff's knowledge of the subject matter. There is simply no evidence that extra time will allow Plaintiff to pass the test if he lacks the substantive knowledge to do so.

### IV.  Public interest

The purpose of the ADA is to provide a level playing field for the disabled. This policy of the Act totally overwhelms Defendant's contention that somehow the credibility of its procedure requires the Court to deny an injunction. Certainly, the credibility of the MCAT and the Texas Tech Medical School has not been diminished by offering Plaintiff extra time on tests. As testified to by Plaintiff's experts, making Plaintiff take the test at normal time is similar to making those without learning disabilities take the test in one-half the normal time.

If the Court grants the Motion, Plaintiff will have the opportunity to become a medical doctor if he can pass the test with the extra time. If he lacks the substantive knowledge, he cannot pass the test. This serves the public interest.

Wherefore, Plaintiff prays that its motion for preliminary injunction be granted.

Respectfully submitted,

John Mozola, SBOT#14615500
Vincent E. Nowak, SBOT #15121550
Brad A. Chapman, SBOT #04119010
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050
806.372.5086 (Fax)

*John Mozola*
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on June 17th, 2003, a true and correct copy of the above and foregoing Plaintiff's Reply to Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction was served on counsel for the Defendant via hand delivery, addressed as follows:

Thomas C. Riney
Gibson, Ochsner & Adkins,
701 S. Taylor
Suite 500
Amarillo, Texas 79101

*John Mozola*