U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 1 8 2003
CLERK, U.S. DISTRICT COURT
By
Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES AVERY RUSH, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. 2-03CV-0140J |
| | ) | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant NATIONAL BOARD OF MEDICAL EXAMINERS ("Defendant") files this Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction.

### I.
### BACKGROUND

The issue in this case is whether Plaintiff has satisfied the heightened burden of proof required for the issuance of a mandatory temporary injunction. Specifically, Defendant submits that Plaintiff has failed to meet his heavy burden to prove all four elements necessary to obtain a preliminary injunction. *See* Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction ("Defendant's Injunction Brief"), pp. 2-3.

## II.
## DISCUSSION

**A.    Plaintiff has failed to clearly prove a substantial likelihood of success on the merits.**

Plaintiff alleges that he is a disabled individual under the Americans with Disabilities Act ("ADA"), claiming that he has Attention Deficit Hyperactivity Disorder ("ADHD") and a reading disorder.[1]

1.    Plaintiff does not have ADHD.

Dr. Egerton admitted that while he had **some grounds to suspect** that Plaintiff has ADHD, Plaintiff does not meet all the criteria for a more formal diagnosis. Indeed, Plaintiff presented very little evidence of his alleged ADHD; Dr. Deshler never even commented on this alleged diagnosis.

Dr. Michael Gordon, a nationally recognized ADHD expert who also acts as an advocate for ADHD individuals and has written approximately ten books on ADHD, testified that Plaintiff's claim of ADHD is wholly unsupported by the documentation submitted or the evidence. In his twenty-five years of focusing on ADHD, he is unaware of anyone with ADHD progressing to the post-graduate level. Dr. Gordon also stated that he would not accept Plaintiff as an ADHD case referral because there is no likelihood that he would give Plaintiff an ADHD diagnosis. Dr. Gordon opined that there is no evidence

---

[1] Although Plaintiff originally claimed he is substantially limited in the major life activities of learning, reading, and working, at the injunction hearing he only claimed to be substantially limited in reading, thus abandoning learning and working as potentially limited activities. Furthermore, Plaintiff testified that he is capable of performing the work of a doctor, thus disproving any claim that the alleged mental impairments substantially limit the major life activity of working.

whatsoever to support diagnosing Plaintiff with ADHD and that the evidence shows that it is an inappropriate diagnosis.[2]

Plaintiff presented no testimony as to how this purported ADHD substantially limited his ability to read nor did he present any evidence as to how the requested accommodation of double time would be the appropriate accommodation for this alleged disorder.

2.      Plaintiff has not proved that he has a reading disorder.

Dr. Egerton admitted that to meet the DSM-IV criteria for a 315.00 Reading Disorder,[3] Plaintiff must show that his allegedly substandard reading significantly interferes with his academic achievement or activities of daily living that require reading skills. Plaintiff did not prove this essential criteria, which is undisputedly necessary to make the diagnosis. Plaintiff takes the position that, based merely on the test administered a few weeks ago for the purpose of obtaining an accommodation, isolated to the exclusion of hundreds of others, he is borderline mentally retarded and mentally retarded on certain cognitive abilities. This position is absurd in light of Plaintiff's considerable academic achievement, which even Dr. Egerton admitted is "outstanding." The evidence reveals that:

- Plaintiff graduated third in his Tascosa High School class of 337 students with a 100.57 grade point average;

---

[2] Dr. Gordon also questioned the ethical propriety of Dr. Egerton evaluating a student from Texas Tech's medical school due to Dr. Egerton being a psychologist in that medical school's Department of Psychiatry.
[3] In his report dated May 20, 2003, Dr. Egerton diagnosed Plaintiff with a 315.00 Reading Disorder (as well as with ADHD).

- Plaintiff graduated with a math degree from the University of Oklahoma with a 3.9 grade point average while also playing Division I varsity tennis;

- Plaintiff was named an Academic All American at OU and received so many academic awards that he could not remember them all;

- Plaintiff obtained an MBA at Texas Tech University with a 3.9 grade point average without any evidence of any accommodation;

- Plaintiff received grades of 91 and 95 in an honors reading course in middle school;

- Plaintiff took numerous honors and advanced placement courses in middle school and high school;

- Many of the approximately 80-100 credit hours received in non-math courses at OU involved significant reading;

- Plaintiff achieved significant scores on numerous standardized achievement tests, administered without accommodation, over numerous years, with no scores in any area that were below that of an average person, including performance on tests designed to measure reading ability.

Thus, Plaintiff not only failed to prove that allegedly substandard reading significantly interfered with his academic achievement or activities of daily living that required reading skills, the overwhelming evidence proved conclusively to the contrary. Like the plaintiffs in *Price v. National Board of Medical Examiners*, 966 F. Supp. 419 (S.D. W.Va. 1997), Plaintiff has not exhibited a pattern of substantial limitations. *See* Defendant's Memorandum of Law on the Americans with Disabilities Act (ADA Brief), pp. 7-8. *See also* the discussion of *Gonzales v. National Board of Medical Examiners*, 223 F.3d 620 (6th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001), at pp. 8-9 of Defendant's ADA Brief.

      3.      Plaintiff provided no explanation for his performance in 2003 on the Woodcock-Johnson III tests.

A substantial portion of the expert testimony focused on the interpretation of data from 1998 (obtained by Ms. Gail Glass, who did not testify) and 2003 (by Dr. Egerton) related to Plaintiff.  Dr. Dawn Flanagan analyzed Plaintiff's performance on seven tests given to Plaintiff in 1998 and 2003 which test on the same abilities.  After testifying that all such scores are within normal limits of functioning when compared to most people, Dr. Flanagan testified that Plaintiff performed **significantly** lower on the 2003 tests, which were administered immediately prior to the filing of this lawsuit, than on the 1998 tests.  Dr. Flanagan testified that the huge difference in the 1998 and 2003 data is highly uncommon, very difficult to explain, and improbable.  Testifying that there had to be an intervening factor in the five years between the tests to explain the substantial difference in the results (such as a brain injury, sensory impairment or a psychological or emotional disturbance), if the results were both valid, Dr. Flanagan stated that she would not even think that it was the same person who took the 1998 tests and the 2003 tests.  Dr. Flanagan also stated that Plaintiff's performance on the 2003 tests is simply not consistent with the historical information pertaining to Plaintiff (she cited the fact that Plaintiff scored average to very superior on over 100 other scores which she reviewed).  Dr. Flanagan concluded that there is no compelling evidence that Plaintiff suffers from a cognitive processing deficit and that it is improbable that both the 1998 test results and the 2003 test results are accurate.

Plaintiff never controverted this testimony even though he called Dr. Egerton as a rebuttal witness. Defendant, on the other hand, has presented evidence explaining several explanations for these aberrant scores. Specifically, Dr. Flanagan testified that such aberrant scores could be the result of the examinee not feeling well or "just having a bad day." Dr. Ortiz describes in detail in his affidavit the possibility of subconscious or unconscious malingering in a test administered under these conditions for the very specific purpose of supporting a request for accommodation and potential confirmatory bias on the part of Dr. Egerton. Dr. Bernier offered similar evidence in his affidavit. Plaintiff offered no evidence in rebuttal of these possible explanations. Rather, Plaintiff relies solely on these scores without any credible explanation as to why they stand out in such stark comparison to previous scores in similar areas (as illustrated by the charts presented by Dr. Flanagan) and his extraordinarily academic achievements.

4. Plaintiff presented inconsistent evidence regarding accommodations allegedly provided to him in the past.

Plaintiff unequivocally admitted that in a document he submitted to Defendant requesting test accommodations on the Step 1 exam, he indicated he had **not** received any accommodations in college, secondary or elementary school. Despite instructions from Defendant to submit "a personal statement describing your disability and its impact on your daily life and educational functioning," Plaintiff failed to submit such a personal statement. While Plaintiff testified that he has received various "informal" accommodations throughout his educational career (in the form of, among other things,

extended time to take exams and complete assignments), Plaintiff admitted on cross-examination that most of the "accommodations" were actually conditions provided to all of his classmates and thus, were not actually accommodations at all. While Plaintiff relies highly upon these "informal" accommodations, a careful review of the evidence shows that he was not receiving exceptional or unusual accommodations at all, but rather the same treatment as everyone else prior to the third time that he took the MCAT. He now asks, however, for separate and exceptional treatment in taking the Step 1 exam with extended time—an accommodation, which in light of Plaintiff's failure to establish that he is a disabled individual under the ADA, amounts to preferential, not equal, treatment.

> 5. Plaintiff's reliance on seven scores from the Woodcock-Johnson III Tests is misleading and inappropriate.

Plaintiff would have the Court believe that this case revolves around seven scores from the Woodcock-Johnson III Tests in support of his claim that he is disabled. Such a simplistic vision of Plaintiff's burden is misguided. More particularly, Plaintiff's interpretation of this case as basically turning on seven scores ignores hundreds of other previous test scores as well as Plaintiff's extraordinary historical academic performance.

In addition to the seven scores relied on by Plaintiff, Dr. Flanagan has reviewed over a hundred other scores or results of Plaintiff and all of them indicate that Plaintiff is average to very superior. Despite relying on these seven 2003 scores, Plaintiff has, as indicated above, wholly failed to explain the uncommon, improbable and significant drop in test results in 2003 when compared to his 1998 test results. Plaintiff has also failed to

explain how an individual with the purported cognitive efficiency and cognitive fluency of Plaintiff, as reflected by the scores on the seven tests, attained the extraordinary level of academic achievement which Plaintiff has or the results he obtained on such tests as the SAT, without accommodation. Dr. Flanagan testified that it is extremely improbable that both the 1998 test results and the 2003 test results are accurate; thus, presented with such an inconsistency, the individual in question's entire history must be consulted. According to Dr. Flanagan, when that history is reviewed, the 1998 test results are more consistent with Plaintiff's historical functioning, while the 2003 test results are not consistent with such functioning. Thus, when the applicable data is viewed in proper context, it is clear that Plaintiff is at least average, and is in most respects substantially above average, when compared to most people in the general population.

Like the plaintiffs in *Price*, Plaintiff has an average or greater than average ability to read or learn and thus, he has failed to prove that he suffers from an impairment which substantially limits the life activity of reading in comparison to most people.

    6.    Plaintiff has presented no evidence that "double time" is an appropriate accommodation.

Plaintiff has arbitrarily requested twice the amount of time as other examinees without showing any basis for this request. There is no evidence from which the Court can determine that giving him twice the amount of time as opposed to ten percent, twenty-five percent, or fifty percent more time might be adequate, if, in fact, Plaintiff had a reading disorder. Because there is no evidence that the requested accommodation would

benefit persons properly diagnosed with a specific disorder, the arbitrary relief requested by Plaintiff should be denied. *See Price*, 966 F. Supp. at 424. Without such evidence, granting the accommodation only greatly enhances the risk that Plaintiff would be given an unfair advantage over other examinees, that the integrity of the exam would be compromised, and the public interest disserved.

**B.    Plaintiff has not clearly shown a substantial threat of irreparable harm if the preliminary injunction is not granted.**

Plaintiff has not met his heightened burden of showing the second element necessary to secure a preliminary injunction, a substantial threat or irreparable harm if the preliminary injunction is not granted:

- Plaintiff has introduced no competent evidence that he will fail Step 1 of the USMLE. The plaintiff in *Gonzales* failed the test on two occasions and was denied injunctive relief.

- Plaintiff has not taken the test. The evidence presented by Plaintiff that he will fail Step 1 of the USMLE is mere speculation and conjecture, which will not support the irreparable harm element. *See Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975). Moreover, Dr. Egerton's testimony regarding this issue is incompetent and is not credible. Dr. Egerton testified that:

    - He was not very familiar with the test;
    - He had never seen the test or a sample;
    - He was not familiar with the way the test was scored; and
    - He has no way to determine Plaintiff's mastery of the content of the subject matter of the test.

- The evidence establishes that Plaintiff has three opportunities to take Step 1 of the USMLE.

- Section 9.6 of the Texas Medical School Student Handbook provides an exception to taking Step 1 before third year rotations. This provision clearly provides Plaintiff with a procedure under which he may petition for an exception to taking the Step 1 of the USMLE before beginning his third year rotations. Plaintiff has introduced no evidence that he has applied for this exception.

Plaintiff's claims of potential injury are based upon speculation and conjecture and amount to nothing more than inconvenience. This does not constitute irreparable harm. *See* Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, p. 11.

1. Plaintiff has not clearly shown that any injury he may suffer outweighs the harm a preliminary injunction would cause the NBME.

Further, Plaintiff has not shown clearly that any injury he may suffer outweighs the harm a preliminary injunction would cause the NBME:

- The NBME is a gatekeeper for medical licensing boards, entrusted with the responsibility of ensuring that the USMLE impartially and fairly identifies those individuals qualified to become physicians.

- In order to maintain the integrity of the exam, the NBME endeavors to be sure all examinees are tested on equal footing and that no examinee or group of examinees receives an unfair advantage. *See* discussion of *Price*, pp. 5-6 of Defendant's ADA Brief.

- The NBME cannot and will not grant a request for an accommodation to an examinee who is not actually disabled under the ADA. If Plaintiff receives accommodations to which he is not entitled, he will be given an unfair advantage over others, and would be receiving preferential, not equal, treatment.

2. Plaintiff has not demonstrated that granting the preliminary injunction would not disserve the public interest.

Moreover, Plaintiff has not shown that granting the preliminary injunction would not disserve the public interest:

- Dr. Gordon, a recognized advocate of the disabled, testified that determining that Plaintiff has a disability would trivialize the diagnosis of disability and would therefore harm the public interest and, specifically, the interest of the truly disabled.

- The public interest would be disserved if the Court grants the requested preliminary injunction because the public has a right to expect that medical doctors are licensed under standards that ensure that each and every doctor is qualified to treat them.

- Licensing boards use the NBME's USMLE to determine whether an individual is qualified to become a medical doctor and rely upon the NBME to ensure that exam scores are a valid and reliable indicator.

- Given Plaintiff's failure to appropriately document an ADA disability, mandating that the NBME allow Plaintiff twice the regular time allotted for taking Step 1 of the USMLE would give Plaintiff an unfair and preferential edge on the exam at the possible expense of safety to the public and fairness to his fellow examinees.

Plaintiff introduced no evidence to prove no disservice to the public interest. Furthermore, counsel for Plaintiff suggested in opening statements that it was the role of the medical school to determine who will be an effective medical doctor. This point was conclusively disproved by Defendant. Texas and every other state has a separate licensing board to determine who is qualified to practice medicine in the respective state. The licensing boards of Texas and every other state rely upon the NBME and its examinations in carrying out their responsibilities to the public of determining the

professional competence of one seeking licensure as a physician. Plaintiff seeks to change the basic nature of the examination by requesting twice the time of others taking the exam without presenting any evidence at all that this would not disserve the public interest. Plaintiff candidly admits that he wants not only to pass the examination but to score well in order to "compete" with others taking the exam for a residency position in a specialty and location of his preference, most likely in a higher-paying specialty than what he refers to as "non-competitive" residency.

Aside from the basic unfairness of giving him twice the time to complete the answers of exams as opposed to those against whom he seeks to compete, Plaintiff has failed in his burden to prove that such a change in the conditions of the exam would not disserve the public interest of trying to truly determine the competency of future physicians under standardized conditions.

### III.
### CONCLUSION

Plaintiff has not established that he is a disabled individual under the ADA entitled to testing accommodations on his upcoming USMLE Step 1 exam. Further, Plaintiff has not met his heavy burden of clearly showing that he is entitled to a mandatory preliminary injunction. More particularly, Plaintiff cannot establish one, much less four, of the elements necessary in order for a mandatory preliminary injunction to issue. For these reasons, among others, the Court must deny Plaintiff's request for injunctive relief.

Respectfully submitted,

GIBSON, OCHSNER & ADKINS, LLP
  Thomas C. Riney – TBN 16935100
  Stephen H. Dimlich, Jr. – TBN 05879550
701 South Taylor, Suite 500
Amarillo, Texas 79101-2400
(806) 372-4271; Fax (806) 378-9797

By _____
         Thomas C. Riney

ATTORNEYS FOR DEFENDANT
NATIONAL BOARD OF MEDICAL
EXAMINERS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of ***Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction*** is being served upon counsel of record by hand delivery this 18th day of June, 2003, as follows:

John Mozola
Vincent E. Nowak
Brad A. Chapman
MULLIN HOARD & BROWN, LLP
500 South Taylor, Suite 800
Amarillo, Texas 79101

_____
Thomas C. Riney