U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 18 2003

CLERK, U.S. DISTRICT COURT
By
    Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMES AVERY RUSH, IV

    Plaintiff,

v.                                          Civil Action No. 2-03CV-0140J

NATIONAL BOARD OF MEDICAL
EXAMINERS,

    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF

**To the Honorable United States District Court Judge Mary Lou Robinson:**

Plaintiff files this short reply to Defendant's Supplemental Brief that was filed this morning with the Court, and respectfully states the following:

1. Before the accommodation of extra time on the Step 1 exam is granted, the NBME requires a current assessment of the applicant's learning disability. (Dr. Flanagan)

2. The NBME prefers the assessment to be done using the Woodcock-Johnson battery of tests. (Dr. Flanagan)

3. The NBME requires a DSM-IV diagnosis of learning disorder. (Dr. Flanagan)

4. Dr. Egerton conducted a current testing and assessment of Rush.

5. Dr. Egerton administered the Woodcock-Johnson battery of tests.

6. Following the testing and clinical assessment of Rush, Dr. Egerton made the DSM-IV clinical diagnosis of reading disorder.

7. The DSM-IV reading disorder requires the following criteria:

> Reading accuracy or comprehension is substantially below that expected given the person's chronological age, measured intelligence, and age appropriate education.

> and

> The disturbance in the above criterion significantly interferes with academic achievement or ***activities of daily living that require reading skills.***

8. Without exception or qualification, both Dr. Gordon and Dr. Flanagan testified that the results of the Woodcock-Johnson tests showed reading accuracy or comprehension substantially below Rush's age (26), intelligence and age appropriate education.

9. Without exception or qualification, both Dr. Gordon and Dr. Flanagan testified that the results of the Woodcock-Johnson tests showed that such a reading deficiency would significantly interfere with a persons reading skills.

10. Without exception or qualification, both Dr. Gordon and Dr. Flanagan testified that one diagnosed with Rush's DSM-IV reading disorder is ***substantially limited in one's ability to read and comprehend.***

11. Without exception or qualification, both Dr. Gordon and Dr. Flanagan testified that one with Rush's DSM-I V reading disorder would require extra time to read and comprehend.

12. Without exception or qualification, both Dr. Gordon and Dr. Flanagan testified that an appropriate accommodation for a person with a DSM-IV reading disorder

**Plaintiff's Response to Defendant's Supplemental Brief – Page 2**

is to afford the person extra time on examinations.

13. Dr. Egerton testified that an appropriate accommodation for Rush would be to afford him double the amount of time on the USMLE Step 1 examination.

14. None of defendants witnesses or affiants, Drs. Flanagan, Gordon, Golden, Ortiz and Bernier, either examined or assessed Rush for a learning disability.

15. Although Rush has met the criteria of both the ADA and the NBME to qualify for the accommodation of extra time on the USMLE Step 1 exam, defendant's experts nonetheless opined that Rush is not learning disabled nor entitled to extra time.

16. Significantly, all of defendant's experts reached these conclusions while admitting that ***none of them have assessed or examined Rush to determine if he is learning disabled.***

17. The only "evidence" proffered by defendant to deny Rush extra time on the USMLE Step 1 examination is Dr. Flanagan's "data" which was never identified or introduced, which she says demonstrates that Rush could not possibly be disabled. This clearly violates the requirements of *Daubert*. Moreover, the quantitative test scores relied upon by Dr. Flanagan included either untimed tests, tests where the accommodation of extra time was given, or tests where time was not a factor (*i.e.*, tests that could not reveal Rush's reading disorder). Of particular note, Dr. Flanagan completely discounted the Woodcock-Johnson test scores that specifically showed Rush's deficiency in speed of processing the written word. In other words, Dr. Flanagan selected only the data that supported

**Plaintiff's Response to Defendant's Supplemental Brief – Page 3**

her opinion. To the contrary, Dr. Egerton relied upon all of the thoroughly gathered history and data *before* reaching the diagnosis of Rush's reading disorder.

18. Whether measured by the statutory language of the ADA, or by defendant's own standards, the evidence clearly show that Rush is entitled to the accommodation of double the amount of time to take the USMLE Step 1 examination.

For these reasons, plaintiff respectfully requests the Court to grant the preliminary injunction requested, ordering the defendant to accommodate his learning disability by providing double the amount of time to take the USMLE Step 1 examination.

Respectfully submitted,

John Mozola, SBOT#14615500
Vincent E. Nowak, SBOT #15121550
Brad A. Chapman, SBOT #04119010
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050
806.372.5086 (Fax)

Attorneys for Plaintiff

**Plaintiff's Response to Defendant's Supplemental Brief – Page 4**

CERTIFICATE OF SERVICE

This is to certify that on June 18th, 2003, a true and correct copy of the above and foregoing Motion for Preliminary Injunction was served on counsel for the Defendant via hand delivery, addressed as follows:

Thomas C. Riney
Gibson, Ochsner & Adkins,
701 S. Taylor
Suite 500
Amarillo, Texas 79101

**Plaintiff's Response to Defendant's Supplemental Brief – Page 5**