# ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 5 2003

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES AVERY RUSH, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. 2-03CV-0140J |
| | ) | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE AND SUPPORTING BRIEF
## IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL

GWINN & ROBY
   Thomas C. Riney – TBN 16935100
   Christopher W. Weber – TBN 00797640
701 South Taylor, Suite 500
Amarillo, Texas 79101-2400
(806) 372-4271
FAX: 378-9797

ATTORNEYS FOR DEFENDANT
NATIONAL BOARD OF MEDICAL
EXAMINERS

# LIST OF AUTHORITIES

**Page**

**Cases**

*Albertson's, Inc. v. Kirkingburg,*
119 S.Ct. 2162 (1999)............................................................................................. 7

*Bartlett v. New York State Board of Law,*
2001 WL 930792 (S.D.N.Y.) ................................................................................ 10

*Bragdon,*
118 S.Ct. ..................................................................................................................... 8

*Carlson Companies, Inc. v. Sperry & Hutchinson Co.,*
374 F. Supp. 1080 (D. Minn. 1974)...................................................................... 20

*Fritsch v. City of Chula Vista,*
187 F.R.D. 614 (S.D. Cal. 1999) ........................................................................... 20

*Pearce v. Club Med Sales,*
172 F.R.D. 407 (N.D. Cal. 1997) .......................................................................... 15

*Priest v. Rotary,*
98 F.R.D. 755 (N.D. Cal. 1983) ............................................................................ 17

*Sutton v. United Airlines,*
119 S.Ct. 2139 (1999)................................................................................. 2, 7, 11

*Toyota Motor Mfg., Kentucky, Inc. v. Williams,*
122 S.Ct. 681 (2002)........................................................................................ 7, 11

**Codes**

42 U.S.C. §12102(2)(A).............................................................................................. 7
42 U.S.C. §1320d-2 ................................................................................................... 14
TEX. HEALTH & SAFETY CODE ANN. §241.151(2) ................................................ 14
TEX. HEALTH & SAFETY CODE ANN. §241.152 ..................................................... 14
TEX. OCC. CODE ANN. §159.002 ............................................................................. 14
TEX. OCC. CODE ANN. §159.003 ............................................................................. 14

**Rules**

FED. R. EVID. 401....................................................................................................... 5
FED. R. CIV. P. 26(b)(2) ........................................................................................... 16
FED. R. CIV. P. 26(b)(4)(B)...................................................................................... 23
FED. R. CIV. P. 26(b)(5) ........................................................................................... 22
FED. R. CIV. P. 26(e)(1) ........................................................................................... 22
FED. R. CIV. P. 26(e)(2) ........................................................................................... 22

TEX. R. EVID. 509(c)(1) ........................................................................................... 13
TEX. R. EVID. 509(c)(2) ..................................................................................... 13, 14
TEX. R. EVID. 509(c)(4) ........................................................................................... 13
TEX. R. EVID. 509(f)(1) ........................................................................................... 13
TEX. R. EVID. 509(f)(2) ........................................................................................... 13
TEX. R. EVID. 509(f)(3) ........................................................................................... 13
TEX. R. EVID. 510 .................................................................................................... 14

**Other Authorities**

Hammill, D.D., Leigh, J.E., McNutt, G., & Larsen, S.C. (1981),
   *A New Definition of Learning* Disabilities, Learning Disabilities Quarterly ............................... 9
*BLACK'S LAW DICTIONARY 1311 (7th ed)* ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES AVERY RUSH, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. 2-03CV-0140J |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | |
| EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE AND SUPPORTING BRIEF
## IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL

NATIONAL BOARD OF MEDICAL EXAMINERS, Defendant herein, submits this Response and Supporting Brief in Opposition to Plaintiff's Emergency Motion to Compel and shows the Court as follows:

## I.
## INTRODUCTION

Plaintiff's Emergency Motion to Compel ("Motion") primarily seeks, among other things, to force the National Board of Medical Examiners ("NBME") to produce a broad array of irrelevant and confidential information relating to NBME's handling of requests by other candidates who have applied to NBME over the last five years for test accommodations under the Americans With Disabilities Act ("ADA") for the Step 1, Step 2 and Step 3 of the United States Medical Licensing Examination ("USMLE"). Plaintiff's Motion additionally seeks to compel NBME to produce irrelevant and confidential information relating to the manner in which NBME has constructed its Step 1, 2 and 3 examinations and the underlying purpose and validity of such examinations. NBME opposes these discovery requests on three separate and sufficient grounds.

First, whether NBME granted or denied accommodations to other medical students who allegedly had different and unique disabilities, is not relevant to the central issues in this case, *i.e.*, whether Plaintiff is in fact disabled within the definition of the ADA and whether NBME must accommodate Plaintiff with extra time to take Steps 1, 2 and 3 of the USMLE.

The U.S. Supreme Court has held that the ADA mandates an "individualized inquiry" into whether Plaintiff is disabled. *Sutton v. United Airlines*, 119 S.Ct. 2139, 2147 (1999). The Court should not order the discovery of other applicant's private and confidential information because doing so would contravene the Supreme Court's directive to perform an individualized assessment. Plaintiff must prove he is disabled and entitled to accommodation through his own particular facts and circumstances, and not through those pertaining to other persons. Moreover, Plaintiff's requests relating to the manner in which NBME constructed its Step 1, 2 and 3 examinations, as well as the underlying purpose and validity of such examinations, seek confidential and proprietary information of NBME that is not relevant to the cardinal issue of whether Plaintiff is disabled. Significantly, Plaintiff has not challenged or raised the validity of the Step 1, 2 or 3 USMLE examinations in his Complaint. Plaintiff has **not** asserted in his Complaint that the substance or content of NBME's examinations discriminate against him or that its examinations do **not** accurately reflect Plaintiff's aptitude or achievement level and instead measure Plaintiff's allegedly impaired reading disability. Therefore, the construction of the USMLE examinations and their purpose and validity are not relevant to any claim or defense of any party, nor would such issues be pertinent to Plaintiff's ADA claim.

Second, compelling the production of private information and records raises serious privacy concerns of non-parties, particularly in light of the information's non-relevance. Plaintiff asks the Court to compel NBME to produce the medical and academic records of

thousands of other medical students who have requested accommodations for alleged disabilities over the past five years.[1] These records contain confidential and personal information, and producing such information would violate the privacy rights of two separate groups of people: the students who requested accommodations on the USMLE (and submitted private medical data in confidence to support their requests), as well as the persons who submitted, in confidence, supporting documentation for those medical students' requests. On balance, Plaintiff's desire to conduct an onerous "fishing expedition" for irrelevant evidence contained in thousands of other persons' confidential files, in a purported attempt to show that NBME's determination of Plaintiff's application is inaccurate or that NBME has granted few accommodations in relation to the number of accommodations requested, cannot outweigh an invasion of these individuals' privacy rights.

Third, producing the wide-ranging discovery that Plaintiff seeks would be extraordinarily burdensome and expensive to NBME, as set forth in detail below. Plaintiff's discovery requests seek records regarding non-parties from January 1, 1998 to present. During this period, the NBME has received approximately 3,300 requests for accommodation in general on the USMLE, and approximately 2000 requests for accommodation regarding learning disabilities. (See Affidavit of Carol Morrison-Featherman attached as Exhibit "B"). In order for NBME to comply with Plaintiff's request in a manner that would reasonably minimize the violation of non-parties' privacy rights implicated by these records' disclosure (such as through redacting the numerous documents contained in each person's file) would place an extraordinary and expensive burden on NBME, which clearly outweighs the discovery's likely benefit, taking into

---

[1] Many of Plaintiff's other discovery requests seeking information directly or indirectly relating to other applicants for accommodation are unlimited in time and/or scope. (See Requests for Production Nos. 1-4 and 16-17 and Interrogatories Nos. 5, 9, 14-15). On page 10 of the Motion, Plaintiff agrees to limit all discovery requests to the time period subsequent to January 1, 1998.

account the needs of the case, the amount in controversy, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issues.

Accordingly, Plaintiff's motion to compel should be denied.

## II.
## NBME'S RELEVANCE OBJECTIONS CONCERNING PLAINTIFF'S DISCOVERY REQUESTS SEEKING INFORMATION ABOUT NBME'S HANDLING OF REQUESTS FOR ACCOMMODATIONS OF OTHER INDIVIDUALS UNRELATED TO THE CASE

**A.      The discovery requests at issue regarding relevance.**

On page 5 of his Motion, Plaintiff complains that NBME objected to the following discovery requests on the basis of relevance[2]:

**INTERROGATORY NO. 5:**  Identify each instance in which Defendant granted an accommodation of extra time to a person who had a reading disability less severe than that shown on the Woodcock Johnson test administered by Dr. Egerton to Plaintiff.

**INTERROGATORY NO. 8**:  Identify the instances in which Defendant has granted a person extra time on the Steps 1, 2 or 3 Tests during the last five years.  You may identify the instances by providing a symbol or code rather than the names of the person to whom extra time has been granted.

**REQUEST FOR PRODUCTION NO. 1:** For each instance in which any expert witness designated by Defendant to testify in this case has determined that a person should be given extra time on a Step 1, Step 2, or Step 3 Tests, please furnish all documents of Defendant and the expert witness concerning that determination.

---

[2]  In addition to relevance objections, NBME also objected to each of these discovery requests on the grounds that such requests are (a) overly broad; (b) unlimited in time and scope (with the exception of Interrogatory No. 8, which was limited to the last five years); and (c) unduly burdensome, in that the <u>burden</u> or <u>expense</u> of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, and the importance of the proposed discovery in resolving the issues presented.  Moreover, NBME objected to each of these requests (with the exception of Interrogatory No.8) because they sought confidential information <u>regarding individuals who are not parties to this case</u> and such disclosure would constitute an invasion of their personal privacy rights.  Significantly, NBME objected to Interrogatory No. 8 and Request Nos. 1, 5-6 and 15-16 to the extent such requests were premature <u>because Plaintiff has not applied to take Step 2 and Step 3 of the USMLE and has not requested test accommodations for Step 2 and Step 3</u>.  An applicant must successfully complete Step 1 and Step 2 before he can apply to take Step 3.

Although Plaintiff attempts to downplay these objections by denominating them as "boilerplate," each of these objections have merit on their own right.  Plaintiff acknowledged the merit of NBME's "unlimited as to time objection" and NBME's confidentiality objection on page 10 of the Motion by agreeing to limit all discovery requests to the time period subsequent to January 1, 1998 and by agreeing to enter into a confidentiality agreement.

**REQUEST FOR PRODUCTION NO. 5:** Documents showing for the last five years the number of accommodations requested by applicants for the Step 1, Step 2, and Step 3 tests based on a reading, writing or learning disability.

**REQUEST FOR PRODUCTION NO. 6:** Documents showing for the last five years the number of accommodations granted by Defendant to applicants for the Step 1, Step 2, and Step 3 tests based on a reading, writing or learning disability.

**DEPOSITION NOTICE ITEM NO. 6:** For the time period after January 1, 1998, the number of applicants for the Step 1 or Step 2 tests who requested accommodations and the number and type of accommodations granted.

**REQUEST FOR PRODUCTION NO. 7:** Documents showing the names of all consultants who in the last five years have reviewed requests for accommodations for extra time on the Step 1, 2 or 3 tests based upon reading, writing or learning disabilities.

**REQUEST FOR PRODUCTION NO. 15:** All documents concerning the decision by Defendant to grant the accommodation of extra time on the Step 1, 2, or 3 tests during the last five years.

**REQUEST FOR PRODUCTION NO. 16:** Documents showing the number of requests for accommodation for extra time to compensate for disabilities received by Defendant for the Step 1, Step 2, or Step 3 tests and the accommodations granted.

**B.  Plaintiff's discovery requests seek information about other non-party applicants that is not relevant to any claim or defense of Plaintiff.**

Plaintiff incorrectly contends that information regarding other medical students' requests for accommodation and NBME's handling of such requests is relevant because it "may show that Defendant has granted few accommodations in relation to the number of accommodations requested or that Defendant has granted accommodations to persons whose disabilities are less pronounced than Plaintiff's. (Motion at 6). This is clearly not relevant to any claim of Plaintiff or any defense of Defendant under Rule 26(b)(1) because such evidence does not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* FED. R. EVID. 401. The confidential records and files of other non-party applicants regarding their disability

applications cannot prove or disprove any of Plaintiff's claims, cannot prove or disprove that Plaintiff has a reading disability and cannot prove or disprove that NBME made an incorrect decision in denying Plaintiff's application for accommodation. Plaintiff argues that "[e]ither of these creates a logical inference that Defendant's refusal to grant an accommodation to Plaintiff is based on an inaccurate determination that Plaintiff is not disabled. If Defendant has been inconsistent in the manner in which it determines requests for accommodations, that fact also creates a logical inference that Defendant's determination of Plaintiff's application is inaccurate." (Motion at 6). These inferences do not logically follow. This argument is simply a superficial attempt by Plaintiff to "bootstrap" the information into relevance by the use of unreasonable "logical inferences."

As shown below, Plaintiff's discovery requests seeking information regarding non-parties' applications, whether the non-parties' were disabled, and the manner in which NBME evaluated those applications, is not relevant to Plaintiff's claim that he is in fact disabled and entitled to accommodation because the ADA requires an individualized inquiry and because such information is *res inter alios acta* and is simply attempted impeachment on a collateral matter. Accordingly, because the requested information is not relevant to any claim of Plaintiff or any defense of NBME, the information is not discoverable and the Court should deny Plaintiff's motion to compel.

1.    **The requested information regarding other applicants is not relevant to establish whether Plaintiff is disabled because the ADA requires an individualized inquiry.**

Whether Plaintiff is entitled to an accommodation under the ADA on the USMLE examinations turns upon whether Plaintiff is "disabled" as defined under the ADA,[3] and not upon whether other applicants are disabled.    The U.S. Supreme Court has made clear, by requiring an "individualized inquiry," that the only evidence relevant to the issue of whether Plaintiff is disabled is evidence of Plaintiff's own disability:

> The definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' [Citation omitted]. <u>Thus, whether a person has a disability under the ADA is an individualized inquiry.</u>

*Sutton v. United Airlines*, 119 S.Ct. 2139, 2147 (1999)(emphasis added). "That the Act defines 'disability' 'with respect to an individual' . . . makes clear that <u>Congress intended the existence of a disability to be determined in such a case-by-case manner.</u>" *Toyota Motor Mnfg., Kentucky, Inc. v. Williams*, 122 S.Ct. 681, 692 (2002)(emphasis added). "[T]he ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] <u>in terms of their own experience</u> . . . is substantial.'" *Id.* (emphasis added)(quoting *Albertson's, Inc. v. Kirkingburg*, 119 S.Ct. 2162 (1999)).

Given that the disability inquiry requires an individualized assessment and relates only to the person at issue, it follows that Plaintiff's discovery requests seeking information relating to other individuals' applications and alleged disabilities and how NBME handled those applications is wholly irrelevant as to whether Plaintiff is disabled and whether he is entitled to accommodation.    A breakdown of the "individualized inquiry" analysis illustrates this point.

---

[3] The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. §12102(2)A).

According to the U.S. Supreme Court, to determine whether Plaintiff is disabled under the ADA, this Court must ask the following questions: (1) does Plaintiff's condition constitute an impairment; (2) does the impairment affect a major life activity; and (3) does the impairment substantially limit the major life activity asserted? *Bragdon*, 118 S.Ct. at 2202-05. NBME's records pertaining to other applicants' requests for accommodation are irrelevant to all three prongs of this test. Such records are irrelevant to the existence of Plaintiff's impairment because records regarding other applicants will have absolutely no bearing whatsoever on whether Plaintiff himself is impaired in his ability to read. The only information relevant to that inquiry is information relating to Plaintiff himself. The requested discovery also is irrelevant as to whether Plaintiff's impairment affects his own major life activities – again, only information relating to Plaintiff will be relevant. And finally, the requested discovery regarding other persons is irrelevant as to whether Plaintiff's impairment substantially limits his own personal life activities. The applications and supporting documentation of other applicants will do nothing to prove or disprove whether Plaintiff's alleged impairment substantially limits his/her own ability to read, process information, and learn.

Because the ADA requires an individualized inquiry, NBME performed an individualized assessment regarding whether Plaintiff has a disability when it decided Plaintiff's application for accommodation. NBME requires large amounts of information and data from each applicant in connection with his or her application in order to comply with NBME's duty to perform an individualized inquiry. Because NBME did not consider any other applicant's information when it made its decision, it follows that Plaintiff should not be entitled to rely upon such information.

Moreover, when evaluating whether NBME discriminated against Plaintiff on the basis of an alleged reading disability, it is not helpful to compare how Plaintiff was treated relative to an-

other allegedly disabled individual. Plaintiff apparently seeks information regarding other applicants, *inter alia*, in an attempt to prove that NBME properly granted accommodations to students who are similarly situated to Plaintiff, yet erroneously denied Plaintiff's request for an accommodation. However, learning disabilities are unique to the individual. According to the commonly accepted definition of a learning disability, as enunciated by the National Joint Council on Learning Disabilities, learning disabilities are intrinsic to the individual. Hammill, D.D., Leigh, J.E., McNutt, G., & Larsen, S.C. (1981), *A New Definition of Learning Disabilities*, Learning Disabilities Quarterly, 4, 336-342.

The other medical students who sought accommodation on the USMLE will not match up with Plaintiff's alleged reading disability, academic background, performance on standardized tests or performance on the batteries of psychometric tests. Thus, a "similarly situated" analysis has no place here, where an individualized inquiry is required.

**2.     Information regarding other persons' requests for accommodation is not relevant under the rule of *res inter alios acta*.**

Black's Law Dictionary defines "*res inter alios acta*" ("a thing done between others") as the "rule prohibiting the admission of collateral facts into evidence." BLACK'S LAW DICTIONARY 1311 (7th Ed.). Plaintiff's requests relating to information about other applicants for accommodation, and how NBME evaluated such requests, are *res inter alios acta*, are collateral to any issue in this case, and are thus irrelevant. Plaintiff is simply trying to impeach NBME's determination by a collateral matter. If the Court allows discovery of such information, it will be necessary for the parties to fully and completely litigate the factual circumstances underlying each medical student's case, and thereby completely subsume the relevant issues in this case with a flood of collateral issues. Any discussion of other individual's applications for accommodation and how NBME handled such applications would certainly divert attention from

the issues at bar and waste judicial time and resources. If the Court orders the requested discovery regarding other applicants, the parties and this Court will be required to analyze the merits of NBME's numerous other decisions regarding accommodations. This will mean engaging in an extremely burdensome and laborious process of determining, on a case-by-case basis whether NBME's evaluation of whether each applicant had a disability was accurate.

**3.      The *Bartlett* Case cited by Plaintiff does not establish relevance.**

Plaintiff cites *Bartlett v. New York State Board of Law*, 2001 WL 930792 (S.D. N.Y.)(not reported in F.Supp.2d)[4], stating that the district court "considered evidence of the inconsistency of the method of New York State Board of Law in determining requests for accommodations on the bar exam." (Motion at 6). While the district court in the *Bartlett* unpublished opinion recited that the plaintiff's expert "compared files with the files of the other applicants who had requested accommodations from the Board due to their learning disabilities," the district court did not discuss or engage in an analysis of whether the information about the other applicants was relevant, nor did the court address any confidentiality or privacy issues. *See Bartlett*, 2001 WL 930792 at *8 and *20. It appears that the questions of relevance and confidentiality of the other applicant's files in *Bartlett* were not at issue or were not contested by the defendant. Accordingly, *Bartlett* is not controlling or relevant.[5]

Importantly, **Plaintiff fails to cite any controlling authority** expressly holding that information regarding other applicants who had requested accommodation due to alleged

---

[4] The *Bartlett* litigation has a tortured prior and subsequent history, as set forth in great detail by the district court in the unpublished opinion at *1-*2.
[5] Bartlett is further distinguishable because the defendant in that case had a policy of automatically denying an accommodation to any applicant who achieved scores above the 30th percentile on particular reading tests. *See Bartlett*, 156 F.3d 321, 331 (2d Cir. 1998), vacated (on other grounds) & remanded mem, 527 U.S. 1031 (1999)). In this case, the testimony at the preliminary injunction hearing demonstrates that NBME affords a request for accommodations individualized attention based on the documents submitted to NBME by or on behalf of the applicant.

disabilities is discoverable and relevant to the issue of whether a plaintiff himself is disabled and entitled to reasonable accommodation of extra time. Plaintiff's argument that such information is relevant to his claim of disability based upon the unpublished *Bartlett* opinion runs directly counter to the Supreme Court's clear requirement that the determination of whether Plaintiff has a disability under the ADA is an "individualized inquiry" that must be proven "by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience." *See Sutton,* 119 S.Ct. at 2147; *Toyota*, 122 S.Ct. 691-92. To the extent that *Bartlett* can be construed to hold that Plaintiff's disability can be proven by collateral evidence regarding other applicants, *Bartlett* is certainly inconsistent with *Sutton* and *Toyota* and therefore is not applicable.

**C.    Granting Plaintiff's Motion to Compel would unnecessarily invade the privacy rights of numerous other non-party applicants.**

**1.    Plaintiff's requests that invade the privacy of non-party applicants.**

Certain of Plaintiff's requests at issue in Plaintiff's Motion collectively seek a broad spectrum of confidential and private information of non-parties who, since January 1, 1998,[6] have requested accommodations and/or received accommodations for the USMLE Step 1, 2 and 3 tests.[7] This is despite the fact that Plaintiff has not applied to take Step 2 and Step 3 of the USMLE, and has not at this time requested test accommodations for the Step 2 and Step 3 tests. Requests for Production Nos. 1, 15 and 16 broadly seek documents and information concerning

---

[6] In response to NBME's objections to certain requests that are unlimited as to time, Plaintiff agrees on page 10 of the Motion to limit all discovery requests to the time period subsequent to January 1, 1998.

[7] *See* Interrogatory No. 5; Request for Production Nos. 1; 5-7; and 15-16. *See* Plaintiff's objection chart on pages 7-9 of the Motion **Please note that Plaintiff's objection chart on page 7 incorrectly omits placing a check mark beside Document Request No. 1 as containing a confidentiality objection** Moreover, concurrently with filing this response, NBME has filed and served a motion for protective order concerning Plaintiff's First Amended Notice of Deposition of Defendant that was served on October 9, 2003. In its motion for protective order, NBME asserts confidentiality objections concerning First Amended Deposition Item Nos. 6, 10 and 13, which seek confidential information and documents relating to non-party applicants for accommodation on the Step 1 and Step 2 USMLE tests. Plaintiff's First Amended Notice of Deposition of Defendant, which is attached hereto as Exhibit "A," supercedes Plaintiff's original corporate deposition notice to Defendant served on September 19, 2003, which is made subject to Plaintiff's Emergency Motion to Compel on page 1 and attached thereto as Exhibit "C."

all decisions by NBME to grant non-parties accommodations **for extra time** and the number of requests for accommodation for extra time.  Requests for Production Nos. 5, 6 and 7 relate to the number of accommodations requested by non-party applicants and the number of accommodations that NBME granted to non-party applicants for the Step 1, 2 and Step 3 tests **based on a reading, writing or learning disability**.  Interrogatory No. 5 directs NBME to identify each instance in which NBME granted an accommodation to a non-party applicant who had a reading disability less severe than shown on the Woodcock Johnson test administered to Plaintiff.  First Amended Deposition Notice Items Nos. 6 and 13 sweepingly seek the number of applicants for the Step 1 or Step 2 tests who requested accommodations, and the number and type of accommodations granted, and request all documents concerning the same.

    **2.**    **Types of confidential and private information in applicants' records.**

These discovery requests at issue, when taken together as a whole, broadly request confidential and private information regarding multitudes of non-party applicants.  (Please see Section D below and the Affidavit of Carol Morrison Featherman).  These records of each applicant include academic information, including standardized test scores, educational background, personal statements, medical evaluations, medical and mental test reports and expert opinions as to the nature and extent of each applicant's alleged disability, if any – all of which constitutes extremely sensitive and private information.  The files and information of non-other applicants sought by Plaintiff's discovery requests implicate the privacy interests of two groups of individuals: the individual applicants who have not voluntarily chosen to put their alleged disability in dispute in a public forum, and the people who submitted, in confidence, supporting documentation on the applicants' behalf.  Since the requested documents are not relevant, and

the countervailing privacy interest is strong, the Court should not compel discovery of these confidential records.

> **4.    Each applicant's files contain confidential and privileged medical and mental health information and each applicant has a right to privacy.**

It is undisputed that the information Plaintiff seeks to discover is sensitive, private information relating to the medical history, mental health history, academic record and/or alleged disabilities of thousands of applicants for accommodation from virtually every state and jurisdiction in the United States. Although NBME will not attempt in this response to identify and summarize the laws in each state that protect from unauthorized or unnecessary disclosure each applicant's medical or mental health records as confidential, privileged or private information, each state has such statutory or common law safeguards.

For example, in Texas, Rule 509(c) of the Texas Rules of Evidence provides that confidential communications between a physician and patient are privileged and that medical records are confidential and privileged and may not be disclosed, except when the communication or record is relevant to the physical, mental or emotional condition of a patient in proceedings in which any party relies upon the condition as part of the party's claim or defense. TEX. R. EVID. 509(c)(1), (2) and (4). Consent for the release of privileged medical information must be in writing and signed by the patient and the patient has the right to withdraw consent to the release. TEX. R. EVID. 509(f)(1) and (2). Any person who receives the privileged medical information may disclose the information only to the extent consistent with the authorized purposes fro which consent to release the information was obtained. TEX. R. EVID. 509(f)(3). Rule 510 of the Texas Rules of Evidence provides confidentiality for mental health information in civil cases and affords similar protections as for medical communications and medical records.

*See* TEX. R. EVID. 510.[8]   Sections 159.002 and 159.003 of the Texas Occupations Code and

Sections 241.151 and 241.152 of the Texas Health and Safety Code also provide confidentiality

and safeguards against disclosure of a patient's medical communications and medical records.

TEX. OCC. CODE ANN. §§159.002 and 159.003; *see also* TEX. HEALTH & SAFETY CODE ANN.

§§241.151(2) and 242.152.   Further, federal law, such as the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA") provides additional protections from unauthorized

disclosure of each applicant's health information.   *See* 42 U.S.C. §1320d-2.

   Moreover, the medical students who have submitted this information to NBME when

applying for accommodation have a reasonable expectation of privacy in their personal

information provided to NBME – they are informed by NBME that the documentation an

applicant provides to NBME will remain confidential: "TO PROTECT YOUR

CONFIDENTIALITY, ALWAYS SEND YOUR REQUEST AND DOCUMENTATION

---

[8] Rule 510 provides in pertinent part:

(b) General Rule of Privilege.
   (1) Communication between a patient and a professional is confidential and shall not be disclosed in civil cases.
   (2) Records of the identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a professional are confidential and shall not be disclosed in civil cases.

   (3) Any person who received information from confidential communications or records as defined herein, other than a representative of the patient acting on the patient's behalf, **shall not disclose in civil cases the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.**
      ...
   (d) Exceptions. Exceptions to the privilege in court or administrative proceedings exist:
      ...
   (2) **when the patient waives the right in writing** to the privilege of confidentiality of any information, or when a representative of the patient acting on the patient's behalf submits a written waiver to the confidentiality privilege;

   (4) when the judge finds that the patient after having been previously informed that communications would not be privileged, has made communications to a professional in the course of a court-ordered examination relating to the patient's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's mental or emotional health. On granting of the order, the court, in determining the extent to which any disclosure of all or any part of any communication is necessary, shall impose appropriate safeguards against unauthorized disclosure;
   (5) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense;

TOGETHER . . . Do not include these materials with your examination application." It is manifestly unfair to subject these applicants' records and files to unexpected and unwanted scrutiny by another applicant and his counsel.

Because other applicants have not placed their medical and academic status at issue, this Court should not override their desire and reasonable expectation of privacy in maintaining the confidentiality and sanctity of their own personal information.

> **5.    The balance between privacy and disclosure weighs heavily in favor of protecting non-parties' privacy because the information is not relevant to any claim or defense of any party.**

Because protected privacy interests and confidential and privileged information of non-parties are implicated by Plaintiff's discovery requests and First Amended Deposition Notice to Defendant, this Court must carefully balance the Federal Rules of Civil Procedure's policies favoring broad discovery against the opposing fundamental right to privacy:

> Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed, there must then be a careful balancing of the compelling public need for discovery against the 'fundamental right of privacy.

*Pearce v. Club Med Sales*, 172 F.R.D. 407 (N.D. Cal. 1997).

The public interest in a litigant's need for discovery is related entirely to relevance – the less relevant the information, the lower the public interest in its discovery. As set forth above, the other applicant information that Plaintiff seeks is not relevant to any of Plaintiff's claims or NBME's defenses because it does not relate to Plaintiff's alleged disability or to NBME's denial of Plaintiff's requested accommodation, and the records of other applicants cannot prove or disprove that Plaintiff is disabled and entitled to a reasonable accommodation under the ADA.

Another factor the Court should consider is the specificity and particularity of the discovery sought by Plaintiff – the less specific the request, the less discovery that should be allowed in light of the countervailing privacy issues. Here, with regard to the discovery requests at issue (Interrogatory No. 5; Request for Production Nos. 1; 5-7; and 15-16), Plaintiff has failed to specify the categories of documents reasonable particularity as required by Rule 34(b).

### D.   Granting Plaintiff's Motion places an undue burden and unnecessary expense on NBME that outweighs the discovery requested by Plaintiff.

Because Plaintiff's discovery requests at issue exceed the outer limits of relevance, this Court also should consider the undue burden and expense placed on NBME by Plaintiff's requests. Of the discovery requests at issue, Plaintiff has objected to some on the basis of undue burden[9] and unnecessary expense[10] to NBME.

Rule 26(b)(2) addresses the limitation of discovery under the Federal Rules of Civil Procedure. FED. R. CIV. P. 26(b)(2). Rule 26(b)(2) provides in relevant part:

. . .

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: . . . (iii) **the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.** The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

The undue burden and expense that NBME will suffer in complying with the discovery requests at issue are described in detail in the affidavit of Carol Morrison-Featherman, attached hereto Exhibit "B" and incorporated by reference herein. When a discovery request "approaches

---

[9] Interrogatories Nos. 5 and 8; Request for Production Nos. 1-7; 11-12; 15-16; and 27-30; First Amended Deposition Notice Item No. 13
[10] Interrogatories Nos. 5 and 8; Request for Production Nos. 1; 5-7; and 15-16.

the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the court must then weigh that request with the hardship to the party from whom the discovery is sought." *Priest v. Rotary*, 98 F.R.D. 755 (N.D. Cal. 1983) (quoting *Carlson Companies, Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088 (D. Minn. 1974)); *see also Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 634 (S.D. Cal. 1999).

Given the undue burden and unnecessary expense to NBME in complying with the requests at issue based on the records of thousands of applicants, the large volume of files and records to be located, collected and sorted, the substantial amount of time and labor required to locate, collect, sort and redact the records, and the fact that the information sought is irrelevant, the Court should deny the Plaintiff's motion to compel.

Plaintiff seeks to remedy the issue of the confidentiality and privacy of the other applicant's information, records and files, by simply stating on page 10, paragraph E of the Motion that "Plaintiff is willing for the privacy rights of those applicants to be protected by the use of same code [as used in *Bartlett*, 2001 W.L. 93072 at *20]." However, while the non-parties' invasion of privacy implications are mitigated if their records are redacted to delete their names and their files assigned various codes denominating their alleged disabilities and whether NBME granted or denied their respective applications for accommodations, redaction geometrically increases the hardship and burden imposed upon the NBME, by requiring it not only to compile, but to, review, redact, create identifying information, re-review, and then produce the requested records. As described in the affidavits of NBME, this burden is onerous and the expense is significant. Thus, **the burden or expense of Plaintiff's proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in**

controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Moreover, once the confidential and privileged information in the multitude of other applicant's files are redacted, it becomes even less useful. For example, if NBME redacts all identifying information of an applicant and simply provides a list of whether accommodations were or were not granted, the information is meaningless. The NBME's treatment of other applicants would be relevant only if there is evidence that those applicants had the exact same disabilities and to the exact same extent as Plaintiff (which is almost impossible given the number of different variables that contribute to a reading disability diagnosis). Such an inquiry only can be performed by delving into the entire profile of the applicant, which itself is based only on an individualized inquiry of that particular applicant's supporting documentation. Such an in-depth analysis jeopardizes those applicants' privacy rights and provides no value whatsoever since NBME did not consider the other applicants' profiles in making its decision with respect to Plaintiff.

In sum, the balancing inquiry before the Court appears like this: On the one hand, there is the fundamental privacy interests of the other applicants and their supporters and confidential and privileged information that NBME has a duty to protect from unnecessary disclosure; Plaintiff's discovery requests at issue are wholly irrelevant to any of Plaintiff's claims; and the hardship, undue burden and unnecessary expense which NBME would be forced to shoulder to comply with the discovery requests in a way that would minimize the violation of the non-parties' privacy. On the other hand, there is the general policy favoring broad and liberal discovery of **relevant** information. In this case, given the factors just described, the scales of the Court's balance should weigh heavily in favor of denying Plaintiff's motion to compel.

**E.    Issues regarding Plaintiff's First Amended Deposition Notice to NBME**

On September 19, 2003, Plaintiff provided NBME's counsel with a proposed corporate deposition notice to NBME, which is attached to Plaintiff's Motion as Exhibit "C." On October 9, 2003, Plaintiff served NBME with its First Amended Notice of Deposition of Defendant. Contemporaneously with filing NBME's response to this Motion, NBME filed a Motion for Protective Order regarding several matters set forth in Plaintiff's First Amended Notice of Deposition to Defendant, a true and correct copy of which is attached hereto as Exhibit "A" (the "Amended Notice").

NBME does not object to Amended Notice Nos. 1, 2, 5, 7, 8, and 11. However, as set forth in NBME's Motion for Protective Order, NBME objects to Amended Notice Item numbers 3, 4, 6, 9, 10, 12 and 13 because Plaintiff seeks documents that are not relevant to the claim or defense of any party. Moreover, NBME objects to these subject matters because the requested information seeks disclosure of confidential trade secrets of NBME. NBME further objects to Amended Notice No. 13 because Plaintiff seeks documents that are not relevant to the claim or defense of any party. NBME further objects because the request is overly broad, unduly burdensome and the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the importance of the issues at stake and the importance of the proposed discovery in resolving the issues. NBME further objects to this request as applied to Amended Notice Nos. 6 and 10 because it seeks disclosure of confidential and personal information concerning individuals who are not parties to this suit, and the disclosure of such information unnecessarily invades the privacy rights of these persons.

Amended Notice Nos. 3, 4, 9, 10 and 12 relate to subject matters as to the manner in which NBME constructed its tests and the validity of the tests. Amended Notice No. 3 inquires

into whether Step 1 and Step 2 tests are reading comprehension neutral; No. 4 inquires into the amount of time NBME estimates a person of average reading comprehension ability needs for the tests; Nos. 9 and 10 inquire into whether tests administered to Plaintiff and others reflected the aptitude, rather than the impairment of the applicant; and No. 12 inquires into how the questions on the Step 1 test administered to Plaintiff on or about July 2003 were selected, and how the passing score was determined.

Plaintiff's request relating to the manner in which NBME constructed its Step 1 and Step 2 examinations, as well as the underlying purpose and validity of such examinations, seek confidential and proprietary information of NBME that is not relevant to the narrow issues in this case, *i.e.*, whether Plaintiff is disabled and whether he is entitled to reasonable accommodation under the ADA. Plaintiff has not asserted in his Complaint that the substance or content of NBME's tests discriminate against him or that its examinations do not accurately reflect Plaintiff's aptitude or achievement level and instead measure Plaintiff's allegedly impaired reading disability. Information Plaintiff requests regarding the construction and validity of the tests will not go to prove or disprove Plaintiff's claim that he has a reading disability, and will not prove or disprove whether NBME incorrectly determined Plaintiff's application. Therefore, such information is relevant and is not discoverable.

Furthermore, information and documents relating to construction of NBME's Step 1, Step 2 and Step 3 tests are protected from disclosure as confidential trade secrets. As described in Exhibit "B," NBME maintains the secrecy of its underlying data and purpose of its examinations.

Plaintiff's statement on page 4 of his Motion that "Defendant has the statutory obligation to ensure that the test administered to Plaintiff, if he is reading disabled, reflect Plaintiff's achievement level in the various areas of medicine, rather than his reading disability," is not at

relevant or at issue in this case because Plaintiff has not claimed in his Complaint that the Step 1, Step 2 or Step 3 tests of the USMLE do not reflect Plaintiff's achievement level in medicine, and instead reflect his alleged reading disability.

Accordingly, the Court should deny Plaintiff's Motion to Compel NBME to produce witnesses to testify regarding the above-described Amended Deposition Notice subject matters.

**F.      Miscellaneous Issues Regarding Plaintiff's Discovery Requests.**

NBME herein responds to Section V. found on page 10 of Plaintiff's Motion entitled, "Discussion of boilerplate objections." Of course, NBME disagrees with Plaintiff's denomination of NBME's objections as "boilerplate."

With regard to Plaintiff's chart of objections found on page 7 of the Motion, NBME notes that Plaintiff omitted from his column of objections NBME's unduly "expense" objections set forth in the following discovery requests:  Interrogatories Nos. 5 and 8; document requests Nos. 1; 5-7; and 15-16.  In addition, Plaintiff omitted to check the "Confidentiality" objection column regarding Request for Production No. 1.

**1.      Objection that Plaintiff's Discovery Requests are Unlimited as to Time.**

Please refer to Section D above and the affidavit of Carol Morrison Featherman, Ph.D. attached as Exhibit "C."   Plaintiff's agreement to limit all discovery requests as to the time period subsequent to January 1, 1998, does not remedy the extraordinary undue burden and expense that NBME will suffer in complying with Plaintiff's discovery requests at issue.

**2.      Objections of vague, overly broad or ambiguous.**

In connection with Plaintiff's paragraph C on page 10, NBME simply disagrees with Plaintiff that NBME's overly broad, vague and ambiguous objections are "frivolous."   NBME

did not state the specific matter in which the requests are vague, broad or ambiguous because the request at issue speak for themselves.

**3.      Objections of unduly burdensome [and regarding expense].**

Please see NBME's response in Section D above.

**4.      Objections Based on Attorney/Client and Work Product Privileges.**

NBME has provided Plaintiff's counsel with a privilege log pursuant to FED. R. CIV. P. 26(b)(5) which describes the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, enabled Plaintiff to assess the applicability of the privilege or protection.

**5.      Claims of Confidentiality.**

Please see NBME's response contained in Section C above.

**6.      NBME's objections that discovery is ongoing.**

In Plaintiff's chart of objections found on pages 7 through 9 of the Motion, and on page 10 of his Motion, Plaintiff incorrectly characterizes NBME's responses to some of Plaintiff's requests for production that "discovery is ongoing" as an objection.  This statement merely acknowledges NMBE's duty to timely supplement its discovery responses pursuant to F.R.CIV.P. 26(e)(1) and (2).  NBME is not using such response to relieve itself of the duty of responding to discovery requests based on all responsive information currently in its possession, subject of course to its objections and withholding of documents based upon those objections and upon the attorney-client privilege, the attorney work product privilege, the work product privilege, confidentiality, and the consulting-only and trade secret privileges.

**7.      Objections Concerning Consulting Witness Privilege.**

NBME agrees with Plaintiff that NBME is not required to provide any documents or information created by a consulting expert who has been retained solely for the purpose of litigation and who will not testify at the trial of the case. NBME has provided Plaintiff's counsel with a privilege log setting forth the documents and information that NBME has withheld based on the consulting-only privilege of FED. R. CIV. P. 26(b)(4)(B). NBME agrees to supplement its responses to Plaintiff's First Request for Production regarding the consulting-only expert issue and state that at this time, NBME has not retained a consulting expert who is not expected to be called as a witness at trial, but whose mental impressions, opinions or work product have been reviewed by or relied upon by NBME's testifying experts.

8.    **Objection That Documents are not in Defendant's Possession or Control.**

Note that on Plaintiff's chart of objections, Plaintiff incorrectly states that NBME asserted a custody or control objection to Interrogatory No. 5. Plaintiff complains that "it is not clear whether Defendant claims it should not produce information in the possession of persons with whom Defendant has contracted, such as expert witnesses or persons hired to evaluate Plaintiff's request for accommodation." To clarify, NBME asserts the lack of possession, custody or control objection in Requests for Production Nos. 1 and 7 and is not claiming that NBME should not produce information in the possession of persons with whom Defendant has possession or control, subject to NBME's relevance and confidentiality objections. NBME's possession, custody and control objections relate to documents and information that may be in the possession, custody and control of an applicant over whom NBME does not have constructive control.

9.    **Request Concerning Criteria Defendant Uses to Make Determinations Under ADA.**

On page 6 of the Motion, Plaintiff complains of NBME's relevance objections to Requests for Production Nos. 2 through 4 that address the manner in which NBME determines

whether a person is entitled to extra time on the USMLE test; the criteria NBME uses to determine whether one seeking extra time is a reading disability; and criteria used by NBME to determine whether an accommodation of extra time is appropriate. NBME's relevance objection to Requests for Production Nos. 2 through 4 goes to the wording of each request, which necessarily requires NBME to produce information, documents and files of non-party applicants for accommodation that NBME considers as irrelevant. The Court should note that NBME produced numerous documents bates numbered NBME-00001-00190 and NBME-00523-00532 in response to Plaintiff's Requests for Production Nos. 2 through 4. NBME does not claim that its criteria to determine whether a person seeking extra time on the Step 1, Step 2 or Step 3 tests has a DSM-IV reading disability, or that the criteria used by NBME to determine whether an accommodation of extra time is appropriate, is not relevant. Furthermore, NBME referenced its information and guidelines provided on USMLE's web site at http://www.USMLE.org, and to the provisions of the Americans with Disabilities Act and its accompanying and applicable regulations. NBME has produced all responsive documents to these requests it has at this time, subject to its objections stated therein.

**10. Requests concerning defendant's files regarding Plaintiff.**

In NBME's response to Plaintiff's Request for Production No. 8, NBME inadvertently included a relevance objection to Plaintiff's request for his own file. As communicated to Plaintiff's counsel, NBME agrees to withdraw such objection; however, NBME stands on the remaining objections contained in its response. NBME wishes to clearly indicate that it has produced all documents contained in Plaintiff's file, other than documents being withheld under the attorney-client, attorney work product, work product and consulting-only privileges.

Respectfully submitted,

GWINN & ROBY
   Thomas C. Riney – TBN 16935100
   Christopher W. Weber – TBN 00797640
701 South Taylor, Suite 500
Amarillo, Texas  79101-2400
(806) 372-4271
FAX: 378-9797

By_____
        Thomas C. Riney

ATTORNEYS FOR DEFENDANT
NATIONAL BOARD OF MEDICAL
EXAMINERS

## CERTIFICATE OF SERVICE

     This is to certify that a true and correct copy of Defendant's Response and Supporting Brief in Opposition to Plaintiff's Emergency Motion to Compel is being served upon counsel of record by hand delivery this _____ day of October, 2003, as follows:

     John Mozola, Esq.
     Vincent E. Nowak, Esq.
     Brad A. Chapman, Esq.
     MULLIN, HOARD & BROWN, L.L.P.
     500 S. Taylor, Suite 800
     Amarillo, Texas  79101

_____
Thomas C. Riney