UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

JAMES AVERY RUSH, IV

    Plaintiff,

v.

                                                   Civil Action No. 2-03CV-0140J

NATIONAL BOARD OF MEDICAL
EXAMINERS,

    Defendant.

### PLAINTIFF'S REPLY ON HIS MOTION TO COMPEL AND RESPONSE TO DEFENDANTS MOTION FOR PROTECTIVE ORDER

Plaintiff files this reply to Defendant's Response and Supporting Brief in Opposition to Plaintiff's Emergency Motion to Compel ("Defendant's Response") and his response to Motion for Protective Order of Defendant, National Board of Medical Examiners and Brief in Support ("Defendant's Motion for Protective"), both of which were filed October 15, 2003.Plaintiff in this reply and response will address the broad issues raised in Defendant's Response and Defendant's Motion for Protective Order rather than addressing specific discovery requests.

**I.    Summary of the argument.**

The requested discovery is reasonably calculated to lead to the discovery of admissible evidence and is within the scope of the discovery rules, which are broadly and liberally construed. *Burns v. Thiokol Chemical Corp.* 483 F.2d 300, 304 (5th Cir. 1973). Defendant's files on applications for accomodations are discoverable. Those files may demonstrate the inaccuracy of Defendant's evaluation that Plaintiff is not disabled because they show that Defendant granted accommodations to persons with reading disabilities less pronounced than Plaintiff's, or that Defendant failed to follow its own standards or procedures in

1

denying an accommodation to Plaintiff. Insofar as the burden of producing those files, Defendant overstates its case by presuming that each application will require 4.5 hours to redact and that every conceivable entry that could disclose the applicants identity must be redacted. Plaintiff's requests concerning the manner of construction of Defendant's tests is directed to Defendant's obligation under the ADA to assure that its exams are constructed so that the results reflect Plaintiff's aptitude, rather his impaired skills. Some of the discovery requests are couched in this very language.

**II. Defendant should be required to produce files of applicants who have requested accommodations with reasonable redacting to protect confidentiality.**

    **A. Though the ADA mandates an individualized inquiry into whether Plaintiff is disabled, Plaintiff is not limited to direct proof of the disability.**

Plaintiff is not limited to direct proof of his disability. Other applications may show that Defendant granted accommodations to persons less reading disabled than Plaintiff or failed to follow its own procedures in denying Plaintiff's request. Either of these creates an inference that Defendant erred in its determination that Plaintiff is not disabled.

The only ADA case Plaintiff has located concerning the discovery of requests for accommodations to the defendant from persons other than the plaintiff is *Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D 583 (D.C. Kan. 1999). In that case, the plaintiff sought the discovery of files of co-workers who she claimed had been granted accommodations not provided to the plaintiff. The court allowed the discovery and rejected the defendant's contention that the ADA required an individualized inquiry into Plaintiff's disability. 190 F.R.D at 584.

    **B. The *Bartlet* case demonstrates the relevance of Defendant's resolution of requests for accommodations from others than Plaintiff.**

It is true, as Defendant asserts, that the court in *Bartlet* did not specifically state that the applications of those other than the plaintiff were relevant. Nonetheless, that is the inescapable conclusion to be reached from the case. The court listed its factual findings under various headings, including one for plaintiff's expert testimony. In this context, the court noted that one of plaintiff's experts compared plaintiff's files with the files of other applicants who had requested accommodations from the board due to their learning disabilities. 2001 W.L. 930792, at p. 7. The court noted that the expert testified that she was unable to establish a clear method by which the board's outside expert determined whether applicants were to receive accommodations and that she believed the decisions to be arbitrary. She further noted that the board's outside expert occasionally granted accommodations to applicants with higher Woodcock-Johnson scores than the plaintiff. The conclusion is inescapable that the court considered this evidence relevant to its findings that the plaintiff was disabled.

### C.   Defendant admits that the privacy rights of applicants are protected by redacting.

Much of Defendant's Response addresses the confidentiality right of applicants requesting accommodations. Plaintiff recognizes these rights, which can be protected by redacting. Defendant does not deny that applicants' privacy rights are protected by redacting the names of the applicant. It states that "... nonparties' invasion of privacy implications are mitigated if their records are redacted to delete their names and their files assigned various codes..." Defendant's Response p. 17. Therefore, the real objection Defendant made is to the burden of redacting, which is discussed below.

**D.  Defendant has not addressed ways to minimize the burden of producing the applications.**

When propounding discovery requests, Plaintiff's counsel had no information whatsoever about the number of requests for accommodations to Defendant nor the burden of redacting those applications to preserve the confidentiality of the applicants. Defendant has not discussed with Plaintiff methods for reducing the burden to Defendant. The first time Defendant received any information on these matters was October 15, 2003, when Defendant filed its papers with the Court.

Defendant overstates the burden to it and fails to explore how Plaintiff's requests may be limited to ease the burden of Defendant. Defendant does not address how many of the estimated 2,000 files asserting a learning disability involve reading disabilities, which could drastically limit the number of applications to be redacted. In estimating its costs of responding, Defendant assumes, without any support whatsoever, that it would require 4.5 hours per file to copy and redact all identifying information from an average applicant's file. Featherman Affidavit, paragraph 10. Defendant contemplates redacting every bit of information which could conceivably allow someone to discover the identity of the applicant. Defendant has not considered other alternatives, such as obtaining the applicant's permission for the information to be disclosed or making fewer redactions than contemplated by Defendant. Nor has Defendant considered that documents produced in this case are subject to the Stipulated Protective Order signed by the Court on October 14, 2003. Finally, Defendant has not addressed, nor discussed with Plaintiff, the possibility of limiting the requests to those applicants who are similarly situated with Plaintiff: persons with high IQ and reading disabilities.

Defendant also overlooks the fact that item 6 of the deposition notice seeks discovery only on the number of accommodations requested and the number granted, which clearly is not burdensome.

For all these reasons, an appropriate action for the Court is to require the parties to discuss ways to reduce the burden to Defendant, and return to the court if the parties cannot resolve the issue. In any event, Plaintiff should be allowed to depose Defendant on the applications to determine if there is a way to narrow the scope of the requests, but still provide the discovery which is most likely to lead to admissible evidence.

### III. Plaintiff's requests concerning the manner of construction of the tests address ultimate issue in this case.

Defendant claims that Plaintiff has not pleaded that Defendant's tests discriminate against him or do not reflect Plaintiff's aptitude. Defendant also objects that the information requested will not prove Plaintiff's disability or that Defendant incorrectly denied Plaintiff's application. (Motion for Protective Order at p. 8.) These objections are meritless.

Defendant ignores Plaintiff's basic position that the requested information is relevant to Defendant's obligation to make reasonable accommodations if Plaintiff is disabled. Under the ADA, Defendant is required to ensure that the results of the exam reflect Plaintiff's aptitude rather than his impaired skills. The specific language is quoted at pages 3 and 4 of Plaintiff's Motion to Compel. **The subject matter of deposition items 9 and 10 paraphrase Defendant's statutory obligation.** The deposition items covering the reasons for time limits (#2) and amount of time a normal reader needs to complete the tests (#4) are directly related to whether the tests reflect Plaintiff's aptitude. The same is true for item 3 (whether the tests are reading comprehension neutral) and item 12 (how questions on the Step 1 test administered to Plaintiff were selected).

5

The fact that Plaintiff has not pleaded that Defendant has not complied with its reasonable accommodation obligations is irrelevant. Before Plaintiff may do so, its attorneys must form a good faith belief that Defendant has failed to do so. Plaintiff cannot form a good faith belief required for pleading until this discovery is conducted because proof of this fact is exclusively in Defendant's possession.

**IV. Defendant has not provided an adequate privilege log.**

Counsel for Plaintiff has orally communicated to Defendant that for documents created by Defendant's Amarillo counsel, Defendant did not need to provide a detailed privilege log listing individual documents, but that a general description would suffice. Plaintiff has not agreed to a general privilege log on documents generated by Defendant's employees, representatives, or in-house counsel. Plaintiff is especially concerned that Defendant may be claiming as privileged documents that were generated by in-house representatives of Defendant and merely copied to in-house counsel because of the pendency of the litigation. Defendant's counsel agreed shortly before this document was filed that Defendant will furnish a log of this nature by October 20, 2003. Therefore, the Court need take no action on this issue unless Plaintiff challenges the privilege on any documents on the log.

WHEREFORE, Plaintiff seeks the relief prayed for in Plaintiff's Emergency Motion to Compel and Supporting Brief.

DATED: October 16, 2003.                Respectfully submitted,

>John Mozola, SBOT#14615500
>Vincent E. Nowak, SBOT #15121550
>Brad A. Chapman, SBOT #04119010
>MULLIN HOARD & BROWN, LLP
>500 S. Taylor, Suite 800
>P. O. Box 31656
>Amarillo, Texas 79120-1656
>806.372.1123
>806.372.5086 (Fax)

*/s/ John Mozola*
*Attorneys for Plaintiff, James Avery Rush, IV*

## CERTIFICATE OF SERVICE

This is to certify that on October 16, 2003, a true and correct copy of the above and foregoing was served on counsel for the Defendant via hand delivery:

>Thomas C. Riney
>Attorney at Law
>701 S. Taylor
>Suite 500
>Amarillo, Texas 79101

*/s/ John Mozola*
JOHN MOZOLA